**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 8:14-cv-00657 |
| | ) | |
| JOHN DOE subscriber assigned | ) | |
| IP address 72.64.140.132, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### JOHN DOE'S OMNIBUS MOTION TO DISMISS ACTION WITH MOTION TO QUASH NON-PARTY SUBPOENAS OR ENTER PROTECTIVE ORDER, WITH INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendant "John Doe,"[1] identified by Plaintiff only as the accountholder for Internet service having IP Address **72.64.140.132**, in a special, limited appearance by and through the undersigned attorney, and moves this Honorable Court, pursuant to Rules 12(b), 26(b) and (c), and/or 45(d)(3), to **DISMISS** the action and **QUASH** the subpoena seeking John Doe's private information, or issue a protective order protecting same.

## I.   Introduction

On the surface, this case may seem like nearly any one of

---

[1] John Doe and the undersigned attorney are making a special, limited appearance only; this motion is not to be construed as a general appearance by either John Doe or the undersigned attorney. John Doe has not been subject to service of process in this action and does not intend to waive service of process.

the 2195[2] lawsuits pornographer Malibu Media has filed in the United States District Courts since February 2012.[3]   The number, which includes 132 cases in the Middle District of Florida, grows at an alarming rate, with at least 84 new cases filed in the last few weeks.[4]   In truth, this case is actually is quite similar, or, in fact, near identical.   True, since Malibu Media began filing the lawsuits in 2012, the pleadings have been cleaned up, with one Defendant per case; however, one thing remains constant: They all, upon information and belief, are based on facts obtained from Malibu Media's investigator/expert, Tobias Fieser of IPP International UG,

---

[2] Pacer.gov (last check May 22, 2014).

[3] *See also* Gabe Friedman, *The Biggest Filer of Copyright Lawsuits? This Erotica Web Site*, NEW YORKER (Mar. 15, 2014), available at http://www.newyorker.com/online/blogs/currency/2014/05/the-biggest-filer-of-copyright-lawsuits-is-this-erotica-web-site.html; Mike Masnick, *One Single Porn Copyright Troll, Malibu Media, Accounted For Nearly 40% Of All Copyright Lawsuits This Year,* TECHDIRT (May 19, 2014), at http://www.techdirt.com/articles/20140517/06552727268/one-single-porn-copyright-troll-malibu-media-accounted-nearly-40-all-copyright-lawsuits-this-year.shtml ("Of 872 copyright claims filed in the first quarter of 2014, 343 of them were from Malibu Media").

[4] The litigation-as-a-business nature of Malibu Media's numerous lawsuits is highlighted in the efforts taken by legitimate movie studios and music labels to reduce copyright infringement.   While Malibu Media has made a business out of targeting individual BitTorrent users, legitimate companies are working with Internet Service Providers to make strides in reducing the frequency of illegal file sharing. *See* Verizon Copyright Alert Program, available at http://www.verizon.com/Support/Residential/Dotnetcontexthelp/DotNetContextHelp.htm (explaining that "Verizon joined agreement with other Internet Service Providers, music labels, and movie studios to develop a new Copyright Alert Program").   In contrast, Malibu Media offers no such alerts — it merely files lawsuits.

who resides in Germany.

Now, recently discovered evidence, in other nearly identical Malibu Media cases, regarding Mr. Fieser's relationship with Malibu Media and the consequential unreliability of his investigations gives good reason for this Court to take a look at Malibu Media's cases with a new light. Moreover, new orders from the neighboring Southern District of Florida also give good reason for new review.

## II.   **Procedural History**

Like almost all Malibu Media's cases, shortly after this one was filed, Malibu Media moved for leave to issue a third-party subpoena on the Internet Service Provider, here, Verizon, which services the account identified by IP address "72.64.140.132" to identify the account's subscriber (Doc. 6).

This Court found "good cause" for the issuance of a subpoena (Doc. 7). Movant, John Doe, asks that this Court, among other things, reconsider that finding of "good cause."

## III. **Summary of Argument**

The entire instant case against Defendant Internet service accountholder is based *solely* on the allegations of one single expert witness: unlicensed "investigator" Mr. Tobias Fieser of IPP International UG, who resides in Germany. As in the other hundreds (thousands, rather) of similar Malibu

Media's cases, Mr. Fieser's (and thus Malibu Media's) allegations only identify an IP address, which identifies an Internet service *account*, not an individual. Without Mr. Fieser's "evidence," Malibu Media has nothing to tie John Doe — the accountholder for that service — to any infringement whatsoever.

Recognizing that Mr. Fieser's geolocation software makes up the entire factual basis of Malibu Media's complaints, and that his software cannot identify who, if anyone, actually infringed Malibu Media's copyright, two judges in the Southern District of Florida recently rejected similar lawsuits by Malibu Media, and these orders should be considered and followed.

But this motion is based on more than just new orders. Even if the Court were to decline to follow the Southern District, the instant John Doe Internet Subscriber asks the Court to look again at the house of cards that is Malibu Media's case. Malibu Media's entire case is based on data and electronic communications intercepted by an unlicensed investigator who has recently been disclosed in other similar cases to have a contingent-fee relationship with Malibu Media. Therefore, Malibu Media's only data is unlawful, unreliable, and inadmissible. Without this data and information, Malibu

Media has no evidence at all against the instant John Doe —
and no case.  Because Defendant's due process rights are at
stake, not to mention the embarrassment of being associated
with Plaintiff's pornography, the Court should not rely upon
the allegations of this unlicensed investigator who has been
recently disclosed to hold a contingent-fee relationship to
Malibu Media.

Therefore, this case should be dismissed —— or Malibu
Media should be required to show cause why the case should not
be dismissed —— and the subpoena quashed, or a protective
order entered to save John Doe the embarrassment and undue
burden of having his/her private information released in
conjunction with a case that is essentially, a house of cards,
subject to imminent collapse.

## IV.  <u>Recent Orders in Miami have dismissed identical cases because allegations pertaining to an IP address are not enough to identify the infringing individual</u>

On March 20, 2014, in a near-identical case, the
Honorable Ursula Ungaro of the Southern District of Florida
entered an order dismissing Malibu Media's Case No. 1:14-cv-
20213-UU [Doc. 10] (Copy at **Exhibit "1"**).  In that case, Judge
Ungaro had, *sua sponte*, issued a show-cause order[5] requiring

---

[5] Doc. 7 in 1:14-cv-20213-UU (March 5, 2014).

Malibu Media to show good cause why the Court should reasonably rely on the use of geolocation or other technologies to establish the defendant's identity. Malibu Media responded, and, after considering said response, Judge Ungaro entered an order dismissing the case, explaining:

> Plaintiff has not shown how this [Mr. Fieser's] geolocation software can establish the identity of the Defendant. There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district. . . . Even if this IP address is located within a residence, the geolocation software cannot identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright.

Exh. "1." Judge Ungaro also filed show-cause orders in at least two other Malibu Media cases, Case Nos. 0:14-cv-60681-UU [Doc. 5] and 0:14-cv-60682-UU [Doc. 5], after which Malibu Media filed notices of voluntary dismissal. Both cases were closed on March 27, 2014.

Next, on April 4, 2014, in another *Malibu Media v. Doe* case, Case No. 14-20216-FAM, Chief Judge Federico A. Moreno entered another order to show cause (copy at **Exhibit "2"**), therein citing to and following Judge Ungaro's order, and

requiring Malibu Media to show cause why the court should rely on geolocation services to establish the Defendant's identity and location in this district.

Chief Judge Moreno's order was a deviation from at least one previous order he had entered in a similar case, where he had, prior to the entry of Judge Ungaro's order, granted Malibu Media's motion for early discovery, such as one filed on January 31, 2014, in Case No. 1:14-cv-20218-FAM.  In other words, Judge Ungaro's order was a game changer.

Judges Ungaro and Moreno are not alone in finding that cases filed against IP subscribers are not sufficient to identify an individual infringer.  In January, a district judge in Seattle entered an order of dismissal because "simply identifying the account holder associated with an IP address tells us very little about who actually downloaded *Elf-Man* using that IP address." *Elf-Man, LLC v. Cariveau*, 2014 WL 202096, No. C13-0507RSL (Jan. 17, 2014).  One reason is that, with each Defendant identified only by an IP address, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous." *In Re: BitTorrent Adult Film Copyright Infringement Cases*, No. 11-cv-03995, 2012 WL 1570765, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1,

2012).  Due to the increasing popularity of wireless routers, identifying a computer user by an IP address is unlikely, as different family members, visitors, or even neighbors could have performed the alleged downloads. *Id*.  One court observed that as many as "30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material." *Digital Sin, Inc. v. Does 1-176,* 2012 WL 263491 *3 (S.D.N.Y. Jan. 30, 2012).

## V.   **Malibu Media's entire case is based on unlawfully obtained information which would likely be inadmissible**

Next, the Court should consider that all the information used to base Malibu Media's claim against Defendant was obtained unlawfully.  Malibu Media's entire factual basis against Defendant is derived solely from a report conducted by Plaintiff's "investigator," Mr. Tobias Fieser of IPP International UG, an unlicensed entity improperly engaging in regulated activities, including "the business of providing forensic investigation services to copyright owners." (Doc. 5-4 ¶ 5.)  Because Mr. Fieser's investigation results are Malibu Media's entire case[6] and therefore massively prejudicial to

---

[6] Malibu Media alleges in its complaint that its "investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address" (Doc. 1 ¶ 18) and "downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on [Plaintiff's] Exhibit A." (Doc. 1 ¶ 19).

John Doe, this evidence is hugely important to consider early in the proceedings because, if Mr. Fieser's investigation results are inadmissible, Malibu Media has no case.

Mr. Fieser's data is inadmissible, and should be stricken, for the following reasons:

**A.   Mr. Fieser's fee relationship with Malibu Media is in part contingent upon Malibu Media's recovery**

The first reason that Mr. Fieser's data should be stricken is that he is an expert witness whose fee is at least in part contingent upon Malibu Media's settlement.   Recent evidence uncovered in near identical Malibu Media cases in other jurisdictions reveals that Malibu Media's relationship with Mr. Fieser is based on an oral contingency-fee agreement. Like the instant case, these other Malibu Media cases are also filed against anonymous John Doe Internet subscribers; all are also based on Mr. Fieser's declarations and investigations.

Attached as **Exhibit "3"** to this motion is a declaration by Mr. Morgan Pietz,[7] and the exhibits to it are attached as **Exhibits 4-29** hereto.   Mr. Pietz is a California-barred attorney who has represented numerous defendants in near-

---

[7] Mr. Pietz's declaration was filed in other *Malibu Media, LLC v. Doe* cases filed in the District of Maryland, Case Nos. 1:14-cv-0223-MJG, 1:14-cv-0257-CCB, and 1:14-cv-0263-RDB.

identical Malibu Media cases outside Florida.[8]

Mr. Pietz's declaration details an interrogatory propounded last year on Malibu Media in *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-6312, which asked Malibu to identify "all persons or business entities that have an interest, financially or otherwise, in this litigation. . . ." (Exh. 3 at 6, Exh. 4 at 5). In its answer, verified on December 3, 2013, by one of Malibu Media's owners, Ms. Colette Field, Malibu explained, "**Pursuant to an oral contingency fee agreement, IPP International UG is entitled to a small portion of the proceeds from the resolution of this case in consideration for the services it provided.**" (Exh. 3 at 5; Exh. 4 at 6). Mr. Pietz also references another interrogatory, answered December 3, 2013, in *Malibu Media, LLC v. Hinds*, 1:12-cv-1117-WTL-DML (S.D. Ind.) that had inquired into Malibu's agreement with IPP, to which Malibu answered, "Plaintiff and IPP International have an oral agreement that was formed approximately 2.5 years ago. ***This agreement has not ever been modified or amended.*** The terms of this agreement are

---

[8] Mr. Pietz has also represented John Does in other, similar BitTorrent cases, the most notable of which is *Ingenuity 13 LLC v. John Doe*, 2:12-cv-8333-ODW JCX, 2013 WL 1898633 (C.D. Cal. 2013), *appeal dismissed* (Nov. 18, 2013), which case made national headlines a year ago when sanctions were issued against the "porno-trolling collective" of attorneys who had formed AF Holdings and Ingenuity 13 entities "for the sole purpose of litigating copyright-infringement lawsuits." *Id*.

confidential and constitute a trade secret." (Exh. 3 at 5, citing to Exhibit C, p. 5 (here, Exh. 4 at 19)).

These interrogatory responses show clearly that Malibu Media's payment arrangement with Mr. Fieser is and has been a contingency-fee arrangement. The data on which Malibu Media relies for the instant case was obtained by Mr. Fieser between February 28, 2013, and February 3, 2014, as shown in the Complaint (Doc. 001-2, showing dates), or from October 2, 2013, and February 23, 2013, as shown in Mr. Fieser's declaration. Therefore, by the date Ms. Field verified the above-quoted interrogatory answers, Mr. Fieser had already been "investigating" the instant Defendant's IP address for about two months.

If indeed Mr. Fieser — whose data, as said before, is the entire basis of Malibu Media's case — is a contingent-fee witness, his testimony on which this case is based is unreliable and inadmissible. First, contingent-fee witnesses are simply not legal. Pursuant to Rule 4-3.4(b), Rules Regulating The Florida Bar, a lawyer may not enter into a contingent fee agreement with an expert witness (but may pay an expert a reasonable *noncontingent* fee). *See also* 18 U.S.C. § 201(c)(2) (making it illegal to give or offer "anything of value to any person, for or because of the testimony under

oath or to be given by such person as a witness" in any court proceeding).

Furthermore, because a contingent-fee witness is naturally biased, his testimony is inadmissible. *See, e.g.*, *Straughter v. Raymond*, 2011 WL 1789987, 2011 U.S. Dist. LEXIS 53195 at *9-10 (C.D. Cal. May 9, 2011) (collecting cases and holding that a contingent fee expert was *per se* excluded); *In re Mushroom Transp. Co. Inc.*, 70 B.R. 416, 418 (Bankr. E.D. Pa. 1987) (precluding an expert witness employed under a contingent fee agreement from testifying unless the method of compensation was altered); *Gediman v. Sears, Roebuck & Co.*, 484 F. Supp. 1244, 1248 (D. Mass. 1980) (stating it would have excluded expert appraisal testimony on valuation had it initially appeared that the witness had been compensated for his appraisal on a contingent fee basis). "An agreement to give an opinion on a contingent basis, particularly on an arithmetic scale, attacks the very core of expert testimony." *Id. Accord, Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 2000 WL 976800 *3 n.3 (D. Md. 2000) ("Financial arrangements that provide incentives for the falsification and exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of witnesses.").

Moreover, in a case like the instant one, where the

investigator — who, as explained below, is not even properly regulated by the state of Florida — is tracking BitTorrent users who have downloaded video files from a BitTorrent stream, the investigator's interest becomes even more suspect because the inherent bias has more tendency to encourage false testimony and also — potentially — the creation of a "honeypot," or the uploading of certain video files into the BitTorrent stream with the intention of entrapping unsuspecting users into committing potential violations by downloading copyrighted material.[9] Malibu Media has based its claim for damages on the number of infringements Mr. Fieser notes; thus, the more videos that are initially seeded into the BitTorrent swarm, the greater Mr. Fieser's earning potential.

**B.** **Malibu Media has violated Florida chapter 493 by engaging in private investigation without a license**

Next, Because IPP and Mr. Fieser are unlicensed in Florida and have secured evidence for the purpose of using in

---

[9] *See, e.g., Copyright Troll Ran Pirate Bay Honeypot, Comcast Cable Confirms,* TORRENTFREAK Aug. 15, 2013, available at https://torrentfreak.com/copyright-troll-ran-pirate-bay-honeypot-comcast-confirms-130815/;

Joe Mullin, *Pirate Bay Suggests Prenda Did Create "Honeypot" for Downloaders,* ARSTECHNICA, June 7, 2013 http://arstechnica.com/tech-policy/2013/06/pirate-bay-data-suggests-prenda-did-create-honeypot-for-downloaders/

the trial of a civil case, they are in violation of Florida's private investigator requirements as found in Chapter 493, Florida Statutes.  Chapter 493 requires any person conducting investigative activities regulated thereunder to be properly licensed. Fla. Stat. § 493.6118(1)(g).  Among other things, Florida defines "private investigation" to mean "the investigation by a person or persons for the purpose of obtaining information with reference to . . . The business of securing evidence to be used . . . in the trial of civil . . . cases and the preparation therefor." Fla. Stat. § 493.6101(17)(g).  Furthermore, "[e]mploying or contracting with any unlicensed or improperly licensed person or agency to conduct activities regulated under . . . [Chapter 493], or performing any act that assists, aids, or abets a person or business entity in engaging in unlicensed activity, when the licensure status was known or could have been ascertained by reasonable inquiry," is a violation of Chapter 493 and grounds for discipline thereunder. Fla. Stat. § 493.6118(1)(n).  Each licensed Private Investigator in Florida must "[b]e a citizen or permanent legal resident alien of the United States or have appropriate authorization issued by the United States Citizenship and Immigration Services of the United States Department of Homeland Security." Fla. Stat. § 493.6106.

Mr. Fieser resides in and has performed all his "investigation" from Germany, and IPP International UG is "a company organized under the laws of Germany" (Doc. 6-4 ¶ 1). Neither he nor IPP is licensed within the state of Florida. Because Mr. Fieser and IPP operate to secure evidence of copyright infringement to be used in the trial of this civil case, Florida law demands that they be licensed under the statute. Fla. Stat. § 493.6101(17)(g). As Mr. Fieser/IPP is conducting private investigation without proper licensing in Florida, his investigation of John Doe is in violation of Florida Statute Section 493. Furthermore, Malibu Media is also in violation of section 493.6118(1)(n), which makes it a violation to hire an unlicensed private investigator.

Interpreting a similar state licensing statute, the Ohio Court of Appeals concluded that the trial court erred in allowing unlicensed fire investigation experts to testify at trial as to the cause of a house fire in a products liability case. *Donegal Mutual Ins. Co. v. White Consolidated Indust.*, 795 N.E.2d at 134 (Ohio App. 2003). Although the state statute did not expressly prohibit the testimony of an unlicensed fire investigator, the *Donegal* court relying on precedent concluded that the "legislature has clearly stated the public policy that investigations as to the cause of fires

are to be done only by those licensed to do so." *Id.*

Malibu Media may argue that the Florida licensing requirements does not apply to it because Mr. Fieser worked out of Germany. However, Chapter 493 is applicable to this situation because the investigation was on a modem located within Florida. Florida's Fifth District Court of Appeal recently concluded that a nonresident defendant is subject to Florida's Security of Communications Act, chapter 934 Florida Statutes. *See, e.g.*, *France v. France*, 90 So. 3d 860, 864 (Fla. 5th DCA 2012) (citing *Koch v. Kimball,* 710 So. 2d 5 (Fla. 2d DCA 1998)). In granting personal jurisdiction over a nonresident defendant who had recorded a phone call made with a Florida resident, the Court in *France* approved *Koch*, which had held that a tortious act occurred in Florida because an interception had occurred where the communication was uttered, and that a nonresident defendant, having recorded the conversation from another state, was subject to personal jurisdiction in Florida and section 934.03, Florida Statutes. As in *Koch*, the defendant was located in another state; here, Mr. Fieser is located in Germany. Similarly, as in *Koch*, where the transmitted communication originated in Florida, here, the transmitted information Mr. Fieser investigated was allegedly sent from a modem in Florida. In essence, if Defendant's modem is in Florida, the communication was "uttered" from

Florida, because the information originates from the Florida location.  The investigation of a modem within Florida is therefore an act in Florida, and the investigator would be subject to Florida's licensing requirements.

Malibu Media may also attempt to rely on *Capitol Records Inc. v. Thomas-Rasset,* 680 F.Supp.2d 1045, 1058 (D. Minn. 2010), which it has relied upon in other cases, including *Malibu Media, LLC v. Weiheong Koh*, 13-10515, 2013 WL 5853480 (E.D. Mich. 2013), which found the argument flawed, explaining:

> [t]he holding in *Capitol Record* does not govern this case. In that case, the court found that the Minnesota Private Detectives Act did not apply to the plaintiff's investigator. In this case, Defendant raises a different law, and Plaintiff's investigator is not the same as the investigator in *Capitol Record.* Therefore, the fact that the Minnesota law did not apply to that plaintiff's investigator has no bearing on whether the . . . [Florida investigator requirements] appl[y] to IPP.

*Id*. (internal citation omitted); *see also Malibu Media, LLC v. Doe*, 13 C 8484, 2014 WL 1228383 (N.D. Ill. Mar. 24, 2014) (agreeing with *Malibu Media, LLC v. Weiheong Koh*).  Here, also, *Capital Records* is distinguishable, as Minnesota law does not apply to this case in Florida; furthermore, a

different unlicensed investigator is involved. Therefore, *Capitol Records* should not govern the facts of this case.

Since 2012, Malibu Media has been filing these cases and has continued to use Mr. Fieser consistently, therefore consistently violating Florida Statute. Rather than find a proper, Florida-licensed investigator to conduct its investigations, it continues to utilize an unlicensed individual in Germany. Such continued violation of Chapter 493 calls into question the integrity of Malibu Media's only witness — and the entire basis behind the complaint.

### C. <u>Mr. Fieser's interception of the electronic communications at issue was unlawful</u>

Next, an examination of Mr. Fieser's actions in relation to Florida's Security of Communications Act ("FSCA"), Chapter 934 Florida Statutes, and the Federal Wiretap Act ("FWA"), brings the admissibility of Mr. Fieser's testimony into further question. The FSCA basically mirrors the language of the FWA. Both acts prohibit the intentional interception, or the procurement of another person to intercept, any electronic communication. 18 U.S.C. § 2511; § 934.03, Fla. Stat. Moreover, sending or carrying any electronic, mechanical, or other device, for the purpose of the illegal interception of wire, oral, or electronic communications, is prohibited. 18 U.S.C. § 2512; § 934.04, Fla. Stat. Any communication or evidence obtained in violation of FWA or FSCA

cannot be received in evidence in any trial, hearing, or other proceeding in or before any court. 18 U.S.C. § 2515; § 934.06, Fla. Stat.; *see O'Brien v. O'Brien*, 899 So. 2d 1133 (Fla. 5th DCA 2005), *rehearing denied* (finding a wife's illegal interception of her husband's electronic communications with another woman grounds for excluding such communications in divorce proceedings).

BitTorrent enables the uploading and downloading of movies from and to anyone who has access to the Internet and a computer. This access is available to the public. Once a movie is available on a BitTorrent server, anyone with a modem and computer can download it. What is not available to the public is the IP Address of the user who made the movie available and the download history related to the IP address. This data is communicated between the BitTorrent server and the BitTorrent user in a private communication. A BitTorrent user remains anonymous because their IP Address is hidden in a private communication with the BitTorrent server. In this case, Plaintiff hired Mr. Fieser, who worked as, essentially, a hacker: an unlicensed investigator out of Germany retained to hack into the BitTorrent server and surreptitiously access private communications between BitTorrent users and the BitTorrent server, including the users' IP Addresses, download history, including downloads

unlicensed to the Plaintiff[10], and other data. Because Mr. Fieser is intentionally intercepting this information, it is likely that this interception is a FWA and FSCA violation and consequently, could not be used in any civil case, particularly, this civil case.

Plaintiff may, in defense, cite to 18 U.S.C. section 2511(g)(i) or section 934.03(h)(1), Florida Statutes, which states that it is not unlawful to intercept or access an electronic communication made through an electronic communication system configured so that such electronic communication is readily accessible to the general public. Fla. Stat. § 934.03(h)(1). However, this section is irrelevant because Defendant does not contend that any interception of a readily accessible *movie* on a BitTorrent stream is a FWA or FSCA violation; rather, Mr. Tobias's specially designed and proprietary software, which obtains the IP addresses of everyone in the stream, as well as detailed download history and other data, is obtaining information sent outside the access of the general public. If Malibu Media argues that this data was publicly available, such statement

---

[10] According to Mr. Fieser, his software "logged Defendant's IP address being used to distribute party files through BitTorrent," which Mr. Fieser has identified and calculated to being 515 files between February 28, 2013, and February 27, 2014.

directly contradicts the hiring, by Malibu Media, of a special techie in Germany, with his own allegedly unique and proprietary software, to obtain the data. If such information were truly available to the general public, Malibu Media could have obtained the data itself or, at the least, from a properly licensed investigator located closer to the forum court. Instead, to decode private communications and data between, allegedly, a user of Defendant's Internet account, and a BitTorrent site, Malibu Media hired unlicensed, contingent-fee "investigator" IPP International/Mr. Fieser, whose own allegedly proprietary "International IPTRACKER" software hacks into the BitTorrent server from a remote location in Germany to obtain data relating to the IP address and detailed download history, which did not include Plaintiff's works, but of other works to which Plaintiff has no rights. Such actions are prohibited under FWA and FSCA because they are an intentional interception of an electronic communication. Therefore, under FSCA, any evidence obtained therefrom is prohibited from being introduced into a civil case.

Plaintiff may also argue that state law does not apply to it because Mr. Fieser worked out of Germany, not in Florida. However, as explained above, a nonresident defendant

is subject to Florida law. *E.g.*, *France*, 90 So. 3d at 864 (*citing Koch,* 710 So. 2d at 5). As interception of the communication would be a tortious act in Florida, Mr. Fieser's German location is irrelevant to this analysis.

*Arguendo*, even if the court finds that Malibu Media is not subject to Florida's Security of Communications Act, Malibu Media would be subject to the Federal Wiretap Act. Congress has plenary power under the Commerce Clause, U.S.C. Const. Art. 1, § 8, cl. 3, to prohibit all interception of wire communications forming part of interstate or foreign communications network, whether by wiretapping or otherwise. As such, Malibu Media, and Mr. Fieser in Germany, are subject to the Federal Wiretap Act. *See United States v. Blattel*, 340 F. Supp. 1140, 1142 (N.D. Iowa 1972).

Finally, Plaintiff may argue that FSCA does not apply to the transmission of data over the Internet; however, such a claim would be wrong. In a recent case, an action was brought against Google for violating the FWA and FSCA in its operation of Gmail, by reading and collecting the content as well as affiliated data of emails. *In re Google Inc.*, 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. 2013) *motion to certify appeal denied,* 5:13-MD-2430-LHK, 2014 WL 294441 (N.D. Cal. 2014). Google moved to dismiss the count for violation of FWA and FSCA, claiming it was exempt. However, the court denied

Google's motion and found that Google's alleged interception of email content and affiliated data was not exempt from FWA and FSCA and allowed the action to proceed. Here also, information is being sent over the Internet, as it was in *Google*, and intercepted, as was alleged in *Google.* As a result, the FWA and FSCA would be applicable to such illegal interception. Therefore, any evidence Plaintiff has obtained in violation of the FWA and FSCA would be inadmissible.

## VI.   **All signs point to dismissal**

If Mr. Fieser's testimony is unreliable and inadmissible, all references to and reliance on same should be stricken, pursuant to Rule 12(f) as being immaterial, impertinent, or scandalous. With these allegations removed, Malibu Media has not one shred of a factual allegation against John Doe — and therefore no case. In fact, without Mr. Fieser's data, Malibu Media cannot even decipher John Doe's IP address. Therefore, a dismissal is proper pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Therefore, the granting of early discovery of allowing Malibu Media to obtain John Doe's identity from this unlawfully obtained IP address, is certain to result in a blatant violation of John Doe's due process rights. If the case is allowed to continue and Malibu Media obtains John Doe's information, Malibu Media

will attempt to strong-arm John Doe into paying unreasonably high settlement fees, the receipt of which, considering the inadmissibility of Malibu Media's key evidence, would be grossly unfair to the point that Malibu Media — not to mention Mr. Fieser, who would receive a cut of said settlement — would be unjustly enriched.

With dismissal this imminent, the outstanding subpoena seeking John Doe's information must be quashed.  Should the case not be dismissed, considering the impropriety of Malibu Media's investigator and especially given the shameful nature of the pornography at issue, a protective order is proper to protect Defendant from the annoyance, embarrassment, oppression, and undue burden and which would forbid the disclosure of his/her private information to Malibu Media.

## VII. <u>Conclusion</u>

Malibu Media's case is a house of cards, and collapse is imminent.  First, as an IP address is not a person, this Court should follow the trend set in this judicial division by the likes of Judges Ungaro and Moreno in similar or near-identical cases and dismiss the action.  Second, as the IP address in question was obtained unlawfully by an unlicensed investigator and potentially pursuant to a contingent witness-fee agreement, and, being that it is Malibu Media's *only* evidence

against John Doe and the entire evidence on which the instant subpoena was allowed, the order granting early discovery should be overturned and the case dismissed, or, at the very least, Malibu Media should be ordered to show cause as to why all evidence and data from its Investigator/Expert, Mr. Tobias Fieser, and his company, IPP, should not be excluded and the case dismissed.

WHEREFORE, for the foregoing reasons, Defendant, "John Doe," respectfully requests that this Honorable Court enter an Order:

1. GRANTING this Motion;

2. DISMISSING the instant case, or, in the alternative, requiring Malibu Media to SHOW CAUSE why the case should not be dismissed;

3. QUASHING the outstanding subpoena seeking John Doe's identity, or, in the alternative, issuing a protective order protecting same;

4. VACATING this Court's Order granting Plaintiff leave to serve third-party subpoenas; and

5. Any other relief as is just and proper.

## CERTIFICATE OF GOOD-FAITH CONFERENCE

I hereby certify that, on May 20, 2013, I conferred, telephonically, with counsel for Plaintiff, who stated that Plaintiff is opposed to the relief requested in this motion.

/s/ Cynthia Conlin, Esq.
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
cynthia@cynthiaconlin.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed electronically the foregoing with the Clerk of the Court via CM/ECF system which will notify electronically all parties.

*Attorney for John Doe:*

**Cynthia Conlin, P.A.**
1643 Hillcrest Street
Orlando, Florida 32803-4809
Tel 407-965-5519
Fax 407-545-4397
www.cynthiaconlin.com

/s/ Cynthia Conlin, Esq.
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
cynthia@cynthiaconlin.com