# EXHIBIT G

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 2 of 23 PageID 159
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 49 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 1 of 22

## ⓗⓑ BAUMGARTENBRANDT

BaumgartenBrandt  Rechtsanwälte
Friedrichstraße 95   10117 Berlin

Landgericht Berlin
Littenstraße 12-17
10179 Berlin

Rechtsanwälte

Dr. Ralf Baumgarten·
Philipp Brandt
André Nourbakhsch

| | |
|---|---|
| Sekretariat | Frau Haase |
| Durchwahl | +49 30 20 60 97 90-25 |
| E-Mail | haase@bb-legal.de |
| Unser Zeichen | 13/11/nh |

Intern. Handelszentrum
Friedrichstraße 95
10117 Berlin

T  +49 30 20 60 97 90-0
F  +49 30 20 60 97 90-20

15. April 2011


### EILT! Bitte sofort vorlegen!


### - 16 O 55/11 -

### In der einstweiligen Verfügungssache

### Guardaley Ltd. u.a. ./. BaumgartenBrandt GbR

begründen wir unseren Widerspruch vom 15.03.2011 wie folgt:


### I. Sachverhalt


**1.     Zu den Parteien**

Die Verfügungsklägerin zu 1) ist eine nach englischem Recht am 24.04.2008 gegründete Kapitalgesellschaft mit beschränkter Haftung (Limited).

**Glaubhaftmachung:**  Auszug aus dem Register des Companies` House als

**- Anlage AG 1 -**

In Deutschland unterhält sie seit dem 29.01.2009 in Karlsruhe eine Zweigniederlassung.

Bangalore  Bangkok  Beijing  Berlin  Calcutta  Chennai  Hong Kong  Hyderabad  Mumbai  New Delhi  Shanghai
Associated Büros

USt.-Id-Nr. DE246485186
·gem § 29i BRAO von der Kanzleipflicht befreit  Zustellungsbevollmächtigter  Philipp Brandt

Exhibit G - 1
**Seite 1 von 22**

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 3 of 23 PageID 160
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 50 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 2 of 22

BAUMGARTENBRANDT

**Glaubhaftmachung:** Handelsregisterauszug zu der Verfügungsklägerin zu 1) als

*- Anlage AG 2 -*

Der Verfügungskläger zu 2) tritt im Geschäftsverkehr für die Verfügungsklägerin zu 1) als Director of Data Services auf.

**Glaubhaftmachung:** Eidesstattliche Erklärung des Verfügungsklägers zu 2) vor dem United States District Court for the District of Columbia vom 31.12.2009 (Az: CA. 1:10-cv-00453-RMC) in englischer Sprache als

*- Anlage AG 3 -*

Die Verfügungsbeklagte ist eine Rechtsanwaltskanzlei mit Sitz in Berlin.

Herr Rechtsanwalt André Nourbakhsch (ehemals Antragsgegner zu 2) ist Mitarbeiter der Verfügungsbeklagten. Er wird damit unter der Adresse der Verfügungsbeklagten lediglich für die Verfügungsbeklagte tätig und geht dort nicht einer <u>eigenen</u> Geschäftstätigkeit nach. Er ist insbesondere nicht Gesellschafter oder Geschäftsführer der Verfügungsbeklagten.

## 2. Vertragsverhältnisse der Verfügungsklägerin zu 1) und der Verfügungsbeklagten

Zwischen der Verfügungsklägerin zu 1) und der Verfügungsbeklagten bestand ein Vertragsverhältnis, aufgrund dessen die Verfügungsklägerin zu 1) eine Verwaltungs-Software entwickelt und diese der Verfügungsbeklagten für die Dauer des Vertrages zur Nutzung zur Verfügung gestellt hat.

Daneben hat die Verfügungsklägerin zu 1) mit Inhabern von Urhebernutzungsrechten an Filmen Verträge abgeschlossen. Gegenstand dieser Verträge ist die beweissichere Erfassung und Dokumentation von IP-Verbindungsdaten von Inhabern von Internetanschlüssen, die im so genannten Peer-to-Peer-Verfahren (oder auch File-Sharing genannt) urheberrechtlich geschützte Werke der Kunden der Verfügungsklägerin zu 1) anderen Nutzern urheberrechtswidrig zum Download anbieten. Es wird in diesem Zusammenhang mit Nichtwissen bestritten, dass die Verfügungsklägerin durch ihre Kunden ebenfalls beauftragt wurde, auch die IP-Daten von Anschlussinhabern zu ermitteln, die lediglich versuchten, urheberrechtlich geschützte Werke herunterzuladen, ohne dass dokumentiert wird, dass es tatsächlich zu einem Download gekommen ist, geschweige denn, dass die entsprechenden Werke über diese Anschlüsse selbst zum Download angeboten, also öffentlich zugänglichgemacht worden sind.

Die Verfügungsbeklagte hat wiederum mit Inhabern von Urhebernutzungsrechten, die in der Vergangenheit auch mit der Verfügungsklägerin zu 1) Verträge über die Ermittlung von IP-Adressen abgeschlossen haben, Verträge über die Erbringung anwaltlicher Dienstleistungen abgeschlossen. Die Verfügungsbeklagte beantragt im Rahmen ihrer anwaltlichen Dienstleistungen Beschlüsse zur Sicherung und Herausgabe von IP-Adressen, ermittelt von den Internet Service Providern die hinter den IP-Adressen stehenden Anschlussinhaber und macht gegen diese Unterlassungs- und Schadensersatzan-

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 4 of 23 PageID 161
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 51 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 3 of 22

**BAUMGARTENBRANDT**

sprüche geltend. Von ihren Mandanten wird die Verfügungsbeklagte dabei dazu beauf-
tragt, ausschließlich gegen solche Anschlussinhaber vorzugehen, die urheberrechtswid-
rig Filme im Internet gem. § 19 a UrhG öffentlich zugänglichmachen. Sie wurde und
wird nicht dazu beauftragt, gegen Anschlussinhaber vorzugehen, die lediglich versucht
haben, Filme herunterladen, ohne selbst solche der Öffentlichkeit anzubieten. Zur Bean-
tragung der zur Durchführung der Abmahnungen erforderlichen Sicherungs- und
Herausgabebeschlüsse nach § 109 Abs. 9 UrhG hat die Verfügungsbeklagte dem jewei-
ligen Gericht jeweils eine Eidesstattliche Erklärung des Verfügungsklägers zu 2) vorge-
legt, in der der Verfügungskläger zu 2) erklärt, nur IP-Adressen von Internetnutzern zu
identifizieren, die Filmwerke zum Download anbieten. Er hat darin nicht erklärt, dass
die Verfügungsklägerin zu 1) auch IP-Adressen von Personen ermittelt, die lediglich
Filmwerke heruntergeladen oder dies sogar nur versucht haben.

**Glaubhaftmachung:**  Eidesstattliche Erklärung des Verfügungsklägers zu
2) als

**- Anlage AG 4 -**

Mandanten der Verfügungsklägerin zu 1) waren und sind zum Teil heute noch Mandan-
ten der Verfügungsbeklagten. Herr Mark Damon, der in der eidesstattlichen Erklärung
der Frau Barbara Mudge erwähnt wird, vertritt beispielsweise das Unternehmen
Foresight Unlimited mit Sitz in den USA, das zum Zeitpunkt der streitgegenständlichen
Äußerungen sowohl Kunde der Verfügungsklägerin zu 1) als auch Mandantin der Ver-
fügungsbeklagten war. Zu ihren Mandanten, und damit auch zu Herrn Mark Damon von
dem Unternehmen Foresight Unlimited hält die Verfügungsbeklagte selbstverständlich
unabhängig vom Bestehen vertraglicher Beziehungen der Mandanten zu der Verfü-
gungsklägerin zu 1) weiterhin eigenen Kontakt, um ihren anwaltlichen Pflichten aus
den mit den Mandanten abgeschlossenen Geschäftsbesorgungsverträgen unter Beach-
tung der BRAO und der BORA nachzukommen.

**3.   Kündigung des zwischen der Verfügungsklägerin zu 1) und der Verfügungsbeklag-
ten bestehenden Vertragsverhältnisses**

Den zwischen der Verfügungsklägerin zu 1) und der Verfügungsbeklagten bestehenden
Vertrag hat die Verfügungsbeklagte bereits mit Datum vom 21.01.2011 fristlos gekün-
digt. Die Kündigung wurde per Post an die Verfügungsklägerin zu 1) versendet und
ging dieser zudem am 21.01.2011 vorab per Fax zu.

**Glaubhaftmachung:**  Kündigungsschreiben der Verfügungsbeklagten vom
21.01.2011 mit Sendebericht der Faxversendung
vom 21.01.2011, 20:07 Uhr als

**- Anlage AG 5 -**

Mit Datum vom 25.01.2011 hat darüber hinaus auch die Verfügungsklägerin zu 1) mit
Unterschrift des Verfügungsklägers zu 2) der Verfügungsbeklagten die fristlose Kündi-
gung des bestehenden Vertrages erklärt. Die Kündigung ging der Verfügungsbeklagten
am 25.01.2011, 14:37 Uhr per Fax und am 26.01.2011 per Post zu.

Case 8:14-cv-00657-MSS-AEP Document 11-10 Filed 05/30/14 Page 5 of 23 PageID 162
Case 1:14-cv-00263-RDB Document 10-1 Filed 03/28/14 Page 52 of 270
Case 1:10-cv-12043-GAO Document 55-8 Filed 06/13/11 Page 4 of 22

BAUMGARTENBRANDT

| | |
|---|---|
| **Glaubhaftmachung:** | Telefax des Kündigungsschreibens der Verfügungs-klägerin zu 1) vom 25.01.2011, 14:37 Uhr |

**- Anlage AG 6 -**

Damit wussten die Verfügungskläger bei Versand des Antrages auf einstweilige Verfü-gung an das LG Berlin jedenfalls von der Kündigung des Vertrages durch die Verfü-gungsbeklagte. Der Antrag auf Erlass der einstweiligen Verfügung datiert zwar auf den 21.01.2011, ist aber bei Gericht erst am 26.01.2011 eingegangen. Der Versand des An-trags kann daher nicht vor Dienstag, den 25.01.2011 erfolgt sein. Wir behaupten sogar, dass die Verfügungskläger den Antrag auf Erlass der einstweiligen Verfügung nach dem 25.01.2011, 14:37 Uhr, also nach Zugang der Kündigung der Verfügungsklägerin zu 1) bei der Verfügungsbeklagten versendet haben. Sollten die Verfügungskläger anderer Auffassung sein, mögen sie dies entsprechend darlegen und beweisen.

Soweit die Verfügungskläger in ihrem Antrag auf Erlass der einstweiligen Verfügung angeben, seit 2009 mit der Verfügungsbeklagten in einem vertraglichen Verhältnis zu stehen, haben sie im Ergebnis entgegen ihrem eigenen Wissen die Tatsache unterschla-gen, dass dieser Vertrag seit dem 21.01.2011 beendet ist. Wir weisen ausdrücklich auf die strafrechtliche Relevanz dieser Falschaussage hin.

**4. Telefonat des Herrn Nourbakhsch mit Frau Barbara Mudge**

**a. Berufliche Stellung der Frau Barbara Mudge und Anlass des Anrufs bei dieser**

Frau Barbara Mudge ist Mitglied des Board of Directors der Independent Film and Te-levision Alliance (IFTA) in Los Angeles, USA. Sie betreut Unternehmen aus der Film-branche, die Mitglied der IFTA sind. Zu diesen Unternehmen gehört, wie sich auch dem Wortlaut der eidesstattlichen Erklärung der Frau Barbara Mudge (Anlage AS 3) ent-nehmen lässt, das von Herrn Mark Damon vertretene Unternehmen Foresight Unlimited.

Frau Mudge wird darüber hinaus seit längerem für die Verfügungsklägerin zu 1) als de-ren Mitarbeiterin tätig.

| | |
|---|---|
| **Glaubhaftmachung:** | E-Mail von Frau Barbara Mudge vom 25.02.2011 als |

**- Anlage AG 7 -**

Frau Mudge war und ist daher zu keinem Zeitpunkt Kundin der Verfügungsklägerin zu 1) gewesen, sondern deren Mitarbeiterin.

Zudem stellen weder die Verfügungskläger noch Frau Barbara Mudge in der Antrags-begründung bzw. der eidesstattlichen Erklärung die Hintergründe des Telefonats von Frau Mudge mit Herrn Nourbakhsch dar. Frau Barbara Mudge hat nicht ohne Grund mit Herrn Nourbakhsch telefoniert, wie die Antragsbegründung und die eidesstattliche Er-klärung suggerieren mögen. Das Telefonat geschah vielmehr, nachdem die Verfügungs-beklagte mit ihrem Mandanten Foresight Unlimited telefoniert hatte. Offenbar hatte an-schließend Herr Mark Damon vom Unternehmen Foresight Unlimited mit Frau Mudge telefoniert. Es kann diesseits nicht nachvollzogen werden, ob Frau Mudge anschließend

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 6 of 23 PageID 163
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 53 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 5 of 22

**⑱ BAUMGARTENBRANDT**

in Vertretung der Foresight Unlimited oder aber aufgrund ihrer Tätigkeit für die Verfü-
gungsklägerin zu 1) mit Herrn Nourbakhsch gesprochen hat. In jedem Fall erfolgte das
Gespräch aber auf Wunsch und Initiative von Frau Mudge und mit Wissen der Mandan-
tin der Verfügungsbeklagten Foresight Unlimited.

Die an Frau Mudge in dem Telefonat mit Herrn Nourbakhsch weitergegebenen Infor-
mationen bezogen sich ausschließlich auf das Mandatsverhältnis der Verfügungsbeklag-
ten zur Mandantin Foresight Unlimited und das zuvor mit Herr Mark Damon geführte
Telefonat. Frau Mudge wollte die darin aufgeworfenen Fragen selbst noch einmal dar-
gelegt haben. Es wurde in diesem Zusammenhang während des Gesprächs ausdrücklich
immer wieder auf das Gespräch mit Herrn Damon Bezug genommen und Frau Mudge hat
hat wiederholt dargelegt, dass Herr Damon ihr Kunde (client) sei und sie daher mit ih-
rem Anruf einer Bitte von ihm nachkomme, sich das ihm mitgeteilte nochmals selbst
darlegen zu lassen.

> **Glaubhaftmachung:** Zeugnis des Herrn Nourbakhsch, zu laden über die
> Verfügungsbeklagte

Die Antragsbegründung und die eidesstattliche Erklärung von Frau Barbara Mudge er-
wecken ferner den Eindruck, dass Frau Mudge am 05.01.2011 auf Initiative von Herrn
Nourbakhsch angerufen wurde. Tatsächlich war es aber Frau Barbara Mudge selbst, die
zunächst versucht hatte, Herrn Nourbakhsch am 05.01.2011, ca. 16:30 Uhr anzurufen.

> **Glaubhaftmachung:** Zeugnis der Mitarbeiterin der Verfügungsbeklagten,
> Frau Nadine Haase, zu laden über die Verfügungs-
> beklagte

Da Herr Nourbakhsch zum Zeitpunkt des Anrufs der Frau Mudge nicht zu sprechen
war, haben Herr Nourbakhsch sowie Herr Philipp Brandt, Gesellschafter der Verfü-
gungsbeklagten, Frau Mudge noch am selben Tag zurückgerufen.

> **Glaubhaftmachung:** Zeugnis des Herrn Nourbakhsch, zu laden über die
> Verfügungsbeklagte

Den Inhalt des Telefonats hat Frau Mudge unvollständig und falsch wiedergegeben. Bei
Abgabe der eidesstattlichen Erklärung vom 16.01.2011 und damit 11 Tage nach dem
Telefonat konnte sich Frau Mudge offenbar schon nicht mehr präzise an den Inhalt des
Gesprächs erinnern. Dies zeigt sich an der Tatsache, dass sie schreibt: „Sinngemäß
ergab sich folgender Gesprächsinhalt:" Anschließend gibt sie lediglich „sinngemäß" ei-
ne Zusammenfassung des Gesprächsinhalts wieder, der auf die Anträge der Verfügung
verkürzt wurde und das Gesagte unvollständig und falsch wiedergibt. Hinzu kommt,
dass das Gespräch auf Englisch und damit einer Fremdsprache für Herrn Nourbakhsch
geführt wurde. Der Inhalt des Gesprächs war zudem juristischer Art, weshalb Frau
Mudge, die im Unterschied zu Herrn Rechtsanwalt Nourbakhsch keine Juristin ist, das
von Herrn Nourbakhsch Gesagte falsch verstanden haben könnte.

Dass Frau Mudge den Inhalt des Gesprächs offenbar falsch verstanden hat, zeigt sich
bereits hinsichtlich der nicht mehr streitgegenständlichen Aussage in Punkt 1) der Ei-
desstattlichen Erklärung (Anlage AS 3). Schon in diesem Punkt hat Frau Mudge das
Gesagte falsch wiedergegeben: Herr Nourbakhsch hat Frau Mudge mitgeteilt, dass die
Verfügungsklägerin zu 1) IP-Verbindungsdaten, die die Verfügungsklägerin zu 1) für
einen Inhaber von Urheberrechten ermittelt hat, der von der Verfügungsbeklagten recht-

Exhibit C
Seite 3 von 22

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 7 of 23 PageID 164
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 54 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 6 of 22

BAUMGARTENBRANDT

lich vertreten wurde, über einen Zeitraum von fünf Monaten einer anderen Rechtsan-
waltskanzlei übermittelt hat. Diese Kanzlei hat sodann auf Betreiben der Verfügungs-
klägerin zu 1) im Namen des Inhabers der Urheberrechte Verfahren gem. § 101 Abs. 9
UrhG vor verschiedenen Landgerichten geführt und die entsprechenden Beschlüsse auf
Herausgabe der Daten der Inhaber der Internetanschlüsse erwirkt. Herr Nourbakhsch
teilte Frau Mudge mit, dass ein exklusives Mandatsverhältnis zwischen dem betreffen-
den Inhaber der Urheberrechte und der Verfügungsbeklagten bestand und die Verfü-
gungskläger den Inhaber der Urheberrechte von der Weitergabe der Daten an die dritte
Kanzlei nicht in Kenntnis gesetzt haben. Im Gegensatz hierzu gibt Frau Mudge in der
eidesstattlichen Erklärung an, Herr Nourbakhsch hätte erklärt, es seien Rechtstitel ein-
gefordert worden, die an die Verfügungsbeklagte abgetreten worden seien. Die Verfü-
gungsbeklagte lässt sich keine Rechte abtreten. Ebenso ist nicht nachvollziehbar, dass
Frau Mudge behauptet, Herr Nourbakhsch hätte behauptet, die dritte Rechtsanwalts-
kanzlei hätte Klage eingereicht.

**b.     Zu den streitgegenständlichen Aussagen im Telefonat**

**aa.    Zum Tenor Punkt 1. a) – Diebstahl der Software**

Herr Nourbakhsch hat in dem fraglichen Telefonat mit Frau Mudge nicht ausgesagt,
dass der Verfügungskläger zu 2) die von der Verfügungsklägerin zu 1) genutzte Ermitt-
lungssoftware von einem Schweizer Unternehmen gestohlen hat. Herr Nourbakhsch hat
Frau Mudge vielmehr lediglich über die Umstände der früheren Mitarbeit des Verfü-
gungsklägers zu 2) bei der Logistep AG informiert. Er hat sie namentlich darüber in-
formiert, dass der Verfügungskläger zu 2) bis zum 31. Oktober 2008 als Leiter der tech-
nischen Abteilung bei der Logistep AG beschäftigt war und diese eine Software zur
Ermittlung von Urheberrechtsverletzungen entwickelt hatte. In einer eidesstattlichen
Versicherung, die zu einer Klage in den USA gegen die Verfügungsklägerin zu 1) im
Internet veröffentlicht worden ist, hat der Verfügungskläger zu 2) hingegen behauptet,
bereits seit Anfang 2007 bei der Verfügungsklägerin zu 1) tätig zu sein.

>       **Glaubhaftmachung:** Zeugnis des Herrn Nourbakhsch, zu laden über die
>                           Verfügungsbeklagten

Weiterhin hat Herrn Nourbakhsch Frau Mudge berichtet, dass Mitarbeiter der Logistep
AG im Dienstwagen des Verfügungsklägers zu 2) noch während dessen Tätigkeit für
die Logistep AG Broschüren und Visitenkarten der GuardaLey Ltd. gesehen haben.

>       **Glaubhaftmachung:** Zeugnis des Herrn Nourbakhsch, zu laden über die
>                           Verfügungsbeklagten

Herr Nourbakhsch hat Frau Mudge ausdrücklich mitgeteilt, dass er aufgrund der Ge-
samtschau dieser Umstände trotz der langen und guten Zusammenarbeit mit den Verfü-
gungsklägern nunmehr nicht mehr mit Sicherheit davon ausgehen könne, dass der Ver-
fügungskläger zu 2) zur Entwicklung der Software der Verfügungsklägerin zu 1) nicht
in rechtswidriger Weise auf urheberrechtlich geschütztes Know-How der Logistep AG
zurückgegriffen habe. Herr Nourbakhsch hat dabei wiederholt betont, dass es sich bislang
nur um begründete Zweifel handelt, die Verfügungsbeklagte aber versucht hat und wei-
ter versucht, diese Frage mit der Verfügungsklägerin zu 1) zu klären um die Zweifel
auszuräumen.

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 8 of 23  PageID 165
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 55 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 7 of 22

Herr Nourbakhsch hat Frau Mudge außerdem davon erzählt, dass der Verfügungskläger zu 2) trotz schriftlicher Aufforderung der Verfügungsbeklagten nicht bereit war, diese Zweifel durch Abgabe einer eidesstattlichen Versicherung auszuräumen.

**Glaubhaftmachung:** Zeugnis des Herrn Nourbakhsch, zu laden über die Verfügungsbeklagten

All diese Details hat Frau Mudge in der eidesstattlichen Erklärung außen vor gelassen. Sie gibt quasi lediglich das wieder, was bei ihr 11 Tage nach dem Telefonat noch in der Erinnerung „hängen geblieben" ist. Und das ist allein ihre persönliche Schlussfolgerung aus den Details des Gesagten, nämlich dass die Software „gestohlen" worden sei.

**bb.  Zum Tenor Punkt 1. b) aa) – Unzuverlässige Rechercheleistungen**

Herr Nourbakhsch hat Frau Mudge darauf hingewiesen, dass der Verfügungsbeklagte erfahren hat, dass die von der Verfügungsklägerin zu 1) im Auftrag der Inhaber der Urheberrechte festgestellten IP-Verbindungsdaten nicht zu 100 % korrekt sind. Die Verfügungsklägerin zu 1) habe mit ihren Ermittlungsleistungen nicht nur so genannte Uploader, also Anbieter von Werken, sondern auch solche Personen erfasst, die lediglich Downloadanfragen an die Verfügungsklägerin zu 1) gestellt habe. Weiter hat Herr Nourbakhsch ausgeführt, dass die Verfügungsklägerin zu 1) die von ihr gelieferten Daten auch nicht nach Up- und Downloadvorgängen unterscheide bzw. entsprechend kenntlich mache. Die Download-Anfragen seien als „Erfassungen", von denen nicht bekannt sei, um wie viele es sich handelt, ohne Ausnahme für zivilrechtliche unberechtigte Ansprüche ohne Bedeutung. Dies bedeute, dass eine unbekannte Anzahl von Abmahnungen wegen der Verletzung von Urheberrechten rechtsgrundlos ergangen sein könnten und die Verfügungsbeklagte weder zum damaligen Zeitpunkt noch heute die Möglichkeit habe, diese zu identifizieren. Abschließend hat Herr Nourbakhsch Frau Mudge darauf hingewiesen, dass unberechtigte Abmahnungen unter Umständen zu Regressforderungen der abgemahnten Personen gegen die Inhaber der Urheberrechte führen können.

**Glaubhaftmachung:** Zeugnis des Herrn Nourbakhsch, zu laden über die Verfügungsbeklagte

**cc.  Zum Tenor Punkt 1. b) bb) – Sammelklage in den USA anhängig**

Herr Nourbakhsch hat Frau Mudge darauf hingewiesen, dass im Internet eine Sammelklageschrift zu finden ist, aus der sich ergibt, dass ein Kläger Klage für sich sowie für über 4.500 andere Betroffene gegen verschiedene Parteien, unter anderem auch gegen die Verfügungsklägerin zu 1) erhoben hat. Er hat ihr darüber hinaus mitgeteilt, dass die Klage ausweislich der Begründung auf dem Vorwurf von „fraud and extortion" [Betrug und Erpressung] beruht.

**Glaubhaftmachung:** Zeugnis des Herrn Nourbakhsch, zu laden über die Verfügungsbeklagte

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 9 of 23 PageID 166
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 56 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 8 of 22

BAUMGARTENBRANDT

**dd.   Zum Tenor Punkt 1. b) cc) – Anbieten anderweitiger Zusammenarbeit**

Weiterhin ist die eidesstaatliche Versicherung der Frau Mudge insoweit unzutreffend, als dass sie behauptet, Herr Nourbakhsch habe ihr angeboten „ihren Mandanten" Untersuchungen von Urheberrechtsverletzungen von einem anderen, bestimmten Unternehmen durchführen zu lassen. Zutreffend ist an dieser Aussage lediglich, dass Frau Mudge Herrn Nourbakhsch gefragt hat, ob es Alternativen zu dem Verfügungskläger zu 1) als Dienstleister gibt. Diese Frage hat Herr Nourbakhsch dahingehend beantwortet, dass es zahlreiche Anbieter am Markt gebe. Auf die weitere Frage von Frau Mudge, ob und inwieweit ein Wechsel des Dienstleisters möglich sei, hat Herr Nourbakhsch im Rahmen seines technischen Verständnisses geantwortet, dass die Übernahme der Überwachungstätigkeiten durch einen anderen Anbieter zumindest technisch ohne weiteres möglich sein sollte.

**5.   Hilfsweise: Keine Behauptung unwahrer Tatsachen**

Bei den streitgegenständlichen Aussagen würde es sich zudem um wahre Tatsachen handeln. Dazu im Einzelnen:

**a.   Zum Tenor Punkt 1. a) – Diebstahl der Software**

Es wird behauptet, dass für die Entwicklung der von der Verfügungsklägerin zu 1) zur Recherche genutzten Software auf Wissen fremder Personen zurückgegriffen wurde, die Software also „gestohlen" wurde. Dass die Ermittlungssoftware der Verfügungsklägerin zu 1) auf Wissen fremder Personen beruht, ergibt sich aus den Umständen, insbesondere den Umständen der Tätigkeit des Verfügungsklägers zu 2).

In dem Gerichtsverfahren vor dem United States District Court for the District of Columbia hat der Verfügungskläger zu 2) in einer eidesstattlichen Erklärung vom 31.12.2009 (Az.: CA. 1:10-cv-00453-RMC) behauptet, bereits seit Januar 2007 bei der Verfügungsklägerin zu 1) tätig zu sein.

> **Glaubhaftmachung:**   Eidesstattliche Erklärung des Verfügungsklägers zu 2) vor dem United States District Court for the District of Columbia vom 31.12.2009 (Az.: CA. 1:10-cv-00453-RMC) in englischer Sprache bereits vorgelegt als
>
> **- Anlage AG 3 -**

Bis zum 31. Oktober 2008 war er allerdings bei der Logistep AG mit Sitz in Steinhausen, Schweiz in führender Position als Chief Technical Officer, das heißt Leiter der Technik angestellt. Im Anschluss daran war er bis zum 21.02.2009 bei der Logistep AG als freier Mitarbeiter tätig.

> **Glaubhaftmachung:**   1.   Eidesstattliche Erklärung des Herrn Richard Schneider, Mitglied des Verwaltungsrates der Logistep AG, Sennweidstr. 45, 6312 Steinhausen, Schweiz als
>
> **- Anlage AG 8 -**

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 10 of 23 PageID 167
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 57 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 9 of 22

BAUMGARTENBRANDT

    2.   Zeugnis des Herrn Richard Schneider, Logistep AG, Sennweidstr. 45, 6312 Steinhausen, Schweiz

Die Logistep AG erbringt wie die Verfügungsklägerin zu 1) Dienstleistungen im Internet und im Bereich Internet-Sicherheit.

**Glaubhaftmachung:**  1.  Handelsregisterauszug der Logistep AG als

    **- Anlage AG 9 -**

    2.  Eidesstattliche Erklärung des Herrn Richard Schneider, Mitglied des Verwaltungsrates der Logistep AG, Sennweidstr. 45, 6312 Steinhausen, Schweiz bereits vorgelegt als

    **- Anlage AG 8 -**

    3.  Zeugnis des Herrn Richard Schneider, Logistep AG, Sennweidstr. 45, 6312 Steinhausen, Schweiz

Die Logistep AG hat als eines der ersten Unternehmen eine Software für die beweissichere Erfassung von IP-Adressen entwickelt und zum Einsatz gebracht. Diese Software wurde von mehreren Mitarbeitern der Logistep AG im Zeitraum von Februar 2004 bis Mai 2005 entwickelt und wird seitdem beständig fortentwickelt.

**Glaubhaftmachung:**  1.  Eidesstattliche Erklärung des Herrn Richard Schneider, Mitglied des Verwaltungsrates der Logistep AG bereits vorgelegt als

    **- Anlage AG 8 -**

    2.  Zeugnis des Herrn Richard Schneider, Logistep AG, Sennweidstr. 45, 6312 Steinhausen, Schweiz

Der Verfügungskläger zu 2) hat der Verfügungsbeklagten gegenüber nie offengelegt, dass er in der Vergangenheit überhaupt für die Logistep AG tätig war, noch hat er offengelegt, dass er bis zum 31. Oktober 2008 bei der Logistep AG angestellt und bis 21.02.2009 als freier Mitarbeiter bei dieser beschäftigt war.

Demnach hat der Verfügungskläger zu 2) nach eigenem Vortrag etwa zwei Jahre parallel für die Verfügungsklägerin zu 1) in gleicher Position gearbeitet, ohne dies der Logistep AG gegenüber offengelegt zu haben.

Der Verfügungskläger zu 2) hatte darüber hinaus vor seinem Ausscheiden aus der Logistep AG eine geheime Rufumleitung von seinem Dienstanschluss bei der Logistep AG auf seine Mobiltelefonnummer 0176-24791824 geschaltet. Die Rufumleitung hatte er dabei nicht am Telefon eingestellt, sondern schon bei dem Telefonanbieter der Logistep AG geschaltet, sodass die Rufumleitung auf den Displays der Telefone der

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 11 of 23 PageID 168
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 58 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 10 of 22

BAUMGARTENBRANDT

Logistep AG nicht sichtbar war. Die Rufumleitung haben Herr Richard Schneider und Herr Michael Wicher von der Logistep AG erst am 29.04.2010 zufällig entdeckt.

| | |
|---|---|
| **Glaubhaftmachung:** | 1. Eidesstattliche Erklärung des Herrn Richard Schneider, Mitglied des Verwaltungsrates der Logistep AG bereits vorgelegt als |

- Anlage AG 8 -

2. Zeugnis des Herrn Richard Schneider, Logistep AG, Sennweidstr. 45, 6312 Steinhausen, Schweiz

3. Eidesstattliche Erklärung des Herrn Michael Wicher, Mitarbeiter der Logistep AG als

- Anlage AG 10 -

Zudem hat der Verfügungskläger zu 2) während seiner Tätigkeit bei er Logistep AG sämtliche an seine E-Mail-Adresse achache@logistepag.com bei der Logistep AG gerichteten E-Mails an seine private E-Mail-Adresse weitergeleitet.

| | |
|---|---|
| **Glaubhaftmachung:** | Eidesstattliche Versicherung des Herrn Leszek Oginski, Direktor der Logistep AG als |

- Anlage AG 11 –

Herr Oginski von der Logistep AG sah schließlich im Dienstwagen des Verfügungsklägers zu 2) noch während seiner Tätigkeit bei der Logistep AG Broschüren und Visitenkarten der GuardaLey Ltd..

| | |
|---|---|
| **Glaubhaftmachung:** | Eidesstattliche Versicherung des Herrn Leszek Oginski, Direktor der Logistep AG, bereits vorgelegt als |

- Anlage AG 11 -

Der Verfügungskläger zu 2) hat der Verfügungsbeklagten jedoch bereits am 10.12.2008, also noch während dessen freiberuflicher Tätigkeit bei der Logistep AG namens der Verfügungsklägerin zu 1) die Ermittlung von Daten von Inhabern von Internetanschlüssen angeboten, die im Internet urheberrechtlich geschützte Werke zum Herunterladen anbieten.

| | |
|---|---|
| **Glaubhaftmachung:** | E-Mail des Verfügungsklägers zu 2) vom 10.12.2008 als |

- Anlage AG 12 -

Angesichts der Tatsache, dass die Logistep AG für die Entwicklung ihrer Ermittlungssoftware unter Einsatz von mindestens drei Mitarbeitern etwa 16 Monate benötigt hat, ist es auffallend, dass die Verfügungsklägerin zu 1) noch vor dem Ausscheiden des Ver-

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 12 of 23 PageID 169
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 59 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 11 of 22

BAUMGARTENBRANDT

fügungsklägers zu 2) aus der Logistep AG in der Lage war, die gleichen Dienstleistun-
gen wie die Logistep AG anzubieten.

Die Zweifel der Verfügungsbeklagten an der Urheberschaft und vor allem an der Zuver-
lässigkeit der Software „Observer" wurden dadurch verstärkt, dass der Verfügungsklä-
ger zu 2) Herrn Nourbakhsch am 30.11.2010 per E-Mail kontaktierte und die Verfü-
gungsbeklagte darum bat, das Gutachten über die Funktionsweise und Zuverlässigkeit
der Software „Observer" nur in zwingend notwendigen Fällen zu verwenden, ohne da-
für einen glaubwürdigen Grund vorbringen zu können.

**Glaubhaftmachung:**   E-Mail   des   Verfügungsklägers   zu   2)   vom
30.11.2010 als

**- Anlage AG 13 -**

Aufgrund der Gesamtschau dieser Tatsachen sind bei der Verfügungsbeklagten Zweifel
an der Urheberschaft der Datenermittlungssoftware „Observer" der Verfügungsbeklag-
ten aufgekommen. Die Verfügungsbeklagte befürchtete, dass der Verfügungskläger zu
2) für die Entwicklung der von der Verfügungsklägerin zu 1) eingesetzten Ermittlungs-
software auf Know-How seines früheren Arbeitgebers, der Logistep AG, zurückgegrif-
fen haben könnte.

Daraufhin hat Herr Nourbakhsch beide Verfügungskläger zur Ausräumung dieser Be-
denken um eine verbindliche Gegendarstellung in Form einer eidesstattlichen Versiche-
rung gebeten.

**Glaubhaftmachung:**   E-Mail des Herrn Nourbakhsch vom 12.01.2011 mit
Anhängen als

**- Anlage AG 14 -**

Beide Verfügungskläger haben bis zur Beantragung der einstweiligen Verfügung die
Abgabe einer solchen Erklärung und damit die Ausräumung dieser Zweifel verweigert.
Alles, was sie getan haben, ist, der Verfügungsbeklagten mitzuteilen, dass sie die Eides-
stattlichen Erklärungen an einen Herrn Guido Hettinger weitergeleitet haben und „erst
nach erfolgter Prüfung durch externe" die eidesstattlichen Erklärungen unterschrieben
werden können.

**Glaubhaftmachung:**   E-Mail   des   Verfügungsklägers   zu   2)   vom
14.01.2011

**- Anlage AG 15 -**

Erst im Rahmen der Beantragung der einstweiligen Verfügung haben die Verfügungs-
kläger eine entsprechende Erklärung abgegeben.

**b.**   **Zum Tenor Punkt 1. b) aa) – Unzuverlässige Rechercheleistungen**

Die Verfügungsklägerin zu 1) ist, wie oben bereits dargestellt, den Mandanten der Ver-
fügungsbeklagten gegenüber lediglich dazu verpflichtet und berechtigt, die IP-Daten
von so genannten Uploadern zu ermitteln, nicht dagegen von Personen, die lediglich ei-
nen sogenannten Download oder gar nur eine Downloadanfrage von urheberrechtlich

Case 8:14-cv-00657-MSS-AEP Document 11-10 Filed 05/30/14 Page 13 of 23 PageID 170
Case 1:14-cv-00263-RDB Document 10-1 Filed 03/28/14 Page 60 of 270
Case 1:10-cv-12043-GAO Document 55-8 Filed 06/13/11 Page 12 of 22

**⊕ BAUMGARTENBRANDT**

geschützten Filmwerken vornehmen. Entsprechend mahnt die Verfügungsbeklagte lediglich den Upload als öffentliches Zugänglichmachen nach § 19 a UrhG ab.

Im Januar 2011 hat die Verfügungsbeklagte von der ipoque GmbH erfahren, dass die von der Verfügungsklägerin zu 1) erbrachten Recherchedienstleistungen teilweise nicht dem mit den Inhabern der Urheberrechte Vereinbarten, noch dem, was abgemahnt wurde, entsprachen und daher unzuverlässig sind.

Die ipoque GmbH ist ein IT-Unternehmen, welches verschiedene Dienstleistungen im Bereich Bandbreiten- und Internetmanagement anbietet. Das Unternehmen ist weltweit tätig, unter anderem für zahlreiche deutsche Universitäten.

| Glaubhaftmachung: | 1. | Darstellung der Referenzkunden der ipoque GmbH unter deren Internetpräsenz auf http://www.ipoque.com/company/customer-references als |
| | | - Anlage AG 16 - |
| | 2. | Zeugnis des Dr. Frank Stummer, zu laden über die ipoque GmbH, Mozartstraße 3, 04107 Leipzig |

Ein Teilbereich, für den unter anderem Herr Dr. Frank Stummer zuständig ist, ist die forensische Datenermittlung von IP-Adressen, unter welchen Urheberrechtsverletzungen im Internet begangen werden.

Die ipoque GmbH hat aufgrund folgender Begebenheit festgestellt, dass die Verfügungsklägerin zu 1) IP-Daten von Anschlussinhabern ermittelt, die selbst keine Filmwerke der Öffentlichkeit zugänglich machen, die also keinen „Upload" vornehmen.

Am 18.11.2009 um 01:03:25 Uhr MEZ hat die ipoque GmbH ein sog. Testscreening zu dem Filmwerk „Antichrist" im Internet durchgeführt. Dieses Filmwerk wurde zum damaligen Zeitpunkt durch die Verfügungsklägerin zu 1) in Internet-Tauschbörsen, insbesondere Peer2Peer-Netzwerken wie „Bittorrent" im Namen des Inhabers der Urheberrechte überwacht. Von der Verfügungsklägerin zu 1) erfasste IP-Adressen wurden durch die Verfügungsbeklagte in Verfahren nach § 101 Abs. 9 UrhG identifiziert und deren Anschlussinhaber gem. §§ 97, 19a UrhG wegen des unerlaubten öffentlichen Zugänglichmachens des vorgenannten Filmwerkes abgemahnt.

Im Zuge dieses Testscreenings hat die Software der ipoque GmbH in dem Netzwerk „Bittorrent" nach Quellen von illegalen Kopien des vorgenannten Filmwerkes gesucht, das heißt Download-Möglichkeiten von Servern gesucht, die diese Dateien anbieten (Uploader). Auf den Servern der ipoque GmbH hat sich zu diesem, wie auch zu keinem anderen Zeitpunkt eine vollständige oder teilweise Kopie des Werkes „Antichrist" befunden. Aus diesem Grund wurde von der ipoque GmbH in dem Netzwerk „Bittorrent" weder ein Bestandteil des Films „Antichrist" angeboten, noch wurde dieser Eindruck im Internet erweckt.

| Glaubhaftmachung: | 1. | Zeugnis des sachverständigen Zeugen Dr. Frank Stummer, zu laden über die ipoque GmbH, Mozartstraße 3, 04107 Leipzig |

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 14 of 23 PageID 171
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 61 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 13 of 22

BAUMGARTENBRANDT

> 2. Powerpoint-Präsentation der ipoque GmbH
> „Fakten zur Abmahnung „Antichrist", Baum-
> gartenBrandt an ipoque, 18.11.2009" vom
> 13.01.2011 als

**- Anlage AG 17 -**

Nach dem Testscreening erhielt die ipoque GmbH eine kostenpflichtige Abmahnung der Verfügungsbeklagten, in der die ipoque GmbH zur Abgabe einer Unterlassungserklärung bis zum 18.05.2010 aufgefordert wurde. Tatvorwurf war ein urheberrechtswidriger Upload, das heißt das öffentliche Zugänglichmachen des Filmwerkes „Antichrist" zum vorgenannten Zeitpunkt des Testscreenings.

**Glaubhaftmachung:**  1.  Zeugnis des Dr. Frank Stummer, zu laden über die ipoque GmbH, Mozartstraße 3, 04107 Leipzig

2.  Abmahnung an die ipoque GmbH vom 27.04.2010 als

**- Anlage AG 18 -**

Es ist beweissicher dokumentiert, dass es technisch ausgeschlossen ist, dass die ipoque GmbH eine solche Datei ganz oder teilweise angeboten hat, also ein so genannter „Upload" stattgefunden hat. Es ist technisch darüber hinaus sogar ausgeschlossen, dass, was nicht Vorwurf der Abmahnung war, ein Download der Datei stattgefunden hat. Zum Tatzeitpunkt bestand seitens der ipoque GmbH nur zu einem einzigen fremden Server Kontakt, der somit nur der Verfügungsklägerin zu 1) zugeordnet werden kann. Die Verfügungsklägerin zu 1) hat ihrerseits aber keine Bestandteile des Filmes angeboten. Stattdessen war das Bittorrent-Überwachungsprogramm Verfügungsklägerin zu 1) „Observer" so eingestellt, dass es anderen Benutzern, das heißt deren Programmen durch ein gefälschtes Bitfeld vorgetäuscht hat, immer im Besitz von 50 % der gesuchten, das heißt angefragten, Datei zu sein.

**Glaubhaftmachung:**  1.  Zeugnis des sachverständigen Zeugen Dr. Frank Stummer, zu laden über die ipoque GmbH, Mozartstraße 3, 04107 Leipzig

2.  Powerpoint-Präsentation der ipoque GmbH „Fakten zur Abmahnung „Antichrist", Baum gartenBrandt an ipoque, 18.11.2009" vom 13.01.2011, bereits vorgelegt als

**- Anlage AG 17 -**

Für das technische Verständnis sei erläutert, dass, sobald ein Bittorrent-Clientprogramm eines Benutzers eine solche Meldung von einem anderen Clientprogramm erhält, es dem Client des anderen Benutzers eine Downloadanfrage für diese Dateibestandteile sendet. Eine solche Anfrage wurde seinerzeit vom Programm (Client) der ipoque GmbH an den Server der Verfügungsklägerin zu 1) geschickt, und dabei wurde von der Verfügungsklägerin zu 1) die IP-Adresse des Benutzers, das heißt konkret die damalige IP-Adresse des Servers der ipoque GmbH erfasst. Dies geschah, obgleich der Server der ipoque

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 15 of 23 PageID 172
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 62 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 14 of 22

(BB) BAUMGARTENBRANDT

GmbH weder einen urheberrechtswidrigen Upload angeboten, noch einen urheber-
rechtswidrigen Download durchgeführt hat, denn von dem Sever der Verfügungskläge-
rin zu 1) konnte der Server der ipoque GmbH mangels Vorhandensein keine Bestandtei-
le der urheberrechtlich geschützten Datei erhalten.

<table>
<tr><td><strong>Glaubhaftmachung:</strong></td><td>1.</td><td>Zeugnis des sachverständigen Zeugen Dr. Frank Stummer, zu laden über die ipoque GmbH, Mozartstraße 3, 04107 Leipzig</td></tr>
<tr><td></td><td>2.</td><td>Powerpoint-Präsentation der ipoque GmbH „Fakten zur Abmahnung „Antichrist", Baum gartenBrandt an ipoque, 18.11.2009" vom 13.01.2011, bereits vorgelegt als</td></tr>
</table>

- Anlage AG 17 -

Dies führte im Ergebnis dazu, dass die ipoque GmbH aufgrund falscher Datenermittlung
zu Unrecht eine Abmahnung erhalten hat.

Die Verfügungskläger trafen sich nach Bekanntwerden der damaligen Abmahnung mit
den Anwälten der ipoque GmbH sowie Herrn Dr. Stummer. Im Rahmen dieses Treffens
wurde den Verfügungsklägern die vorgenannte Powerpoint-Präsentation (**Anlage AG
17**) gezeigt.

**Glaubhaftmachung:** Zeugnis des Herrn Dr. Frank Stummer, zu laden
über die ipoque GmbH, Mozartstraße 3, 04107 Leip-
zig

Deren gesamten Inhalt haben die Verfügungskläger der Verfügungsbeklagten und den
Kunden der Verfügungsklägerin zu 1) in der Folge vorsätzlich verschwiegen. Erst als
die Verfügungsbeklagte im Januar 2011 zufällig in Kontakt zu der ipoque GmbH getre-
ten ist, hat sie davon erfahren, dass die Verfügungsklägerin zu 1) falsche Daten ermit-
telt. Nachdem die ipoque GmbH der Verfügungsbeklagten telefonisch mitgeteilt hat,
dass die Rechercheleistungen der Verfügungsklägerin zu 1) fehlerhaft seien, sind Mitar-
beiter der Verfügungsbeklagten, unter ihnen auch Herr André Nourbakhsch und Herr
Christian Roloff am 13.01.2011 zu der ipoque GmbH an deren Sitz nach Leipzig gefah-
ren und haben sich dort mittels der Powerpoint-Präsentation, die die ipoque GmbH be-
reits der Verfügungsklägerin zu 1) gezeigt hatte, den Ablauf des Test-Screenings erläu-
tern lassen.

<table>
<tr><td><strong>Glaubhaftmachung:</strong></td><td>1.</td><td>Zeugnis des Herrn André Nourbakhsch, zu laden über Verfügungsbeklagte</td></tr>
<tr><td></td><td>2.</td><td>Zeugnis des HerrnChristian Roloff, zu laden über Verfügungsbeklagte</td></tr>
</table>

**c.    Zum Tenor Punkt 1. b) bb) – Sammelklage in den USA anhängig**

Entgegen der Behauptung der Verfügungskläger ist in den USA eine Sammelklage ge-
gen die Verfügungsklägerin zu 1) anhängig. Herr Dimitriy Shirokov hat in eigenem
Namen und im Namen von 4.576 Personen gegen Dunlap, Grubb & Weaver PLLC, US
Copyright Group, Thomas Dunlop, Nicholas Kurtz, die Verfügungsklägerin zu 1) und

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 16 of 23 PageID 173
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 63 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 15 of 22

⑧ BAUMGARTENBRANDT

die Achte/Neunte Boll Kino Beteiligungs Gmbh & Co KG Klage erhoben. Die dortigen
Kläger werden von den Rechtsanwälten BOOTH SWEET LLP mit Sitz in Cambridge,
Massachusetts, USA vertreten.

**Glaubhaftmachung:** Sammelklage von 4.576 Klägern u.a. gegen die Ver-
fügungsklägerin zu 1), online gestellt unter
http://boothsweet.com/wp-
content/uploads/2010/08/Master-Complaint1.pdf
von den Rechtsanwälten BOOTH SWEET LLP, 32R
Essex Street Studio 1A, Cambridge, MA 02139,
USA, als

**- Anlage AG 19 -**

Die Klage ist spätestens am 26.11.2010 bei dem United States District Court, District of
Massachsetts eingegangen. Sie wird dort unter dem Aktenzeichen 1:10-CV-12043-GAO
geführt. Mit Datum vom 26.11.2010 hat das Gericht eine Mitteilung an die Beklagten
über die Klageerhebung erstellt. Dort heißt es: „A lawsuit has been filed against you"
(„Gegen Sie ist eine Klage eingereicht worden").

**Glaubhaftmachung:** Mitteilung des United States District Court, District
of Massachsetts an die Beklagten über den Eingang
einer Klage vom 26.11.2010

**- Anlage AG 20 -**

Die Mitteilung des Gerichts enthält zugleich die Aufforderung an die Beklagten, inner-
halb von 21 Tagen zu der Klage Stellung zu nehmen. An die dortigen Beklagten ver-
sandt oder zugestellt wird die Mitteilung des Gerichts vom 26.11.2010 im Parteibetrieb
durch die Anwälte der Kläger. Es entzieht sich der Kenntnis der Verfügungsbeklagten,
inwieweit die Klage bei der Verfügungsklägerin zu 1) eingegangen ist.

Wir gehen davon aus, dass der Director der Verfügungsklägerin zu 1), wenn er in der
Eidesstattlichen Erklärung (Anlage AS 1) schreibt, dass eine Klageschrift einer einzel-
nen Person existierte, die der Verfügungsklägerin zu 1) nicht innerhalb von 21 Tagen
zugestellt worden sein soll, die Klage in **Anlage AG 19** meint. In der Klageschrift in
**Anlage AG 19** ist zwar nur von „Plaintiff" („Kläger") im Singular die Rede, wie man
aber bei genauerem Lesen des Rubrums und von Punkt 1 der Einleitung problemlos er-
kennen kann, hat Herr Dimitriy Shirokov „on behalf of himself and all others similarly
situated" („für sich selbst und alle anderen in der gleichen Situation") bzw. „on behalf
of himself and 4,576 other similarly-situated victims" („für sich selbst und 4.576 andere
Opfer in der gleichen Situation") u.a. gegen die Verfügungsklägerin zu 1) Klage erho-
ben. Zudem wurde die Klage als „Complaint Class Action", das heißt „Sammelklage"
erhoben und zugelassen. In den Vereinigten Staaten ist dies, anders als in der Bundesre-
publik Deutschland möglich. Andere gegen die Verfügungsklägerin zu 1) in den USA
erhobene Klagen konnte die Verfügungsbeklagte im Internet, wo Klageschriften in den
USA veröffentlicht werden müssen, nicht finden. Die Verfügungsklägerin zu 1) möge,
wenn sie bei ihrer Behauptung bleiben sollte, dass eine Klage einer einzelnen Person
existiert habe, die Klageschrift dieser einzelnen Person vorlegen.

Festzuhalten bleibt, dass gegen die Verfügungsklägerin zu 1) tatsächlich eine Sammel-
klage von 4.576 Personen anhängig ist und Herr Nourbakhsch mit seiner Aussage, ge-

Exhibit G-15

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 17 of 23 PageID 174
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 64 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 16 of 22

Ⓑ BAUMGARTENBRANDT

gen die Verfügungsklägerin zu 1) hätten 4.300 Personen Sammelklage erhoben, sogar untertrieben hat. Die Aussage des Directors der Verfügungsklägerin zu 1) Herrn Ben Perino in der eidesstattlichen Erklärung (Anlage AS 1), gegen die Verfügungsklägerin zu 1) hätte zu keinem Zeitpunkt eine Sammelklage existiert, widerspricht damit im Ergebnis den Tatsachen.

**6.    Mangelnde bzw. unvollständige Zustellung des Beschlusses vom 10.02.2011**

Der Beschluss des LG Berlin vom 10.02.2011 ist Herrn Nourbakhsch weder unmittelbar übergeben worden noch wurde der Beschluss an der Wohnanschrift des Herrn Nourbakhsch einer dort lebenden oder dort beschäftigten Person übergeben oder in den Briefkasten an der Wohnanschrift des Herrn Nourbakhsch eingelegt. Lediglich die Verfügungsbeklagte hat eine beglaubigte Abschrift des Beschlusses, adressiert an Herrn Nourbakhsch erhalten. Diese ist am 11.02.2011 in den Briefkasten der Verfügungsbeklagten eingelegt worden. Die Unterzeichner haben sich aber bisher weder dem Gericht gegenüber noch den Verfügungsklägern gegenüber zu Verfahrens- bzw. Prozessbevollmächtigten des Herrn Nourbakhsch bestellt.

Der Verfügungsbeklagten ist der Beschluss vom 10.02.2011 zwar am Freitag, den 11.02.2011 an dessen Sitz in den Briefkasten eingelegt worden, jedoch ohne die Antragsschrift und deren Anlagen.

## II. Rechtliche Erwägungen

**1.    Keine Vollziehung der einstweiligen Verfügung**

**a.    Keine Zustellung des Beschlusses an Herrn André Nourbakhsch**

Mangels Zustellung des Beschlusses vom 10.02.2011 an Herrn Nourbakhsch ist der Beschluss ihm gegenüber nicht vollzogen worden, §§ 936, 929 Abs. 2 ZPO. Der Beschluss ist ihm weder gem. § 191 ZPO i.V.m. § 177 ZPO unmittelbar noch gem. § 178 Abs. 1 Nr. 1 ZPO in der Wohnung des Herrn Nourbakhsch im Wege der Ersatzzustellung zugestellt worden.

Das Einlegen des Beschlusses in den Briefkasten der Verfügungsbeklagten stellt keine wirksame Zustellung an Herrn Nourbakhsch dar. Eine Zustellung an die Adresse seiner beruflichen Tätigkeit durch Einlegen in den Briefkasten der Verfügungsbeklagten war als Ersatzzustellung gem. § 178 Abs. 1 Nr. 2 ZPO, § 180 S. 1 ZPO nicht möglich. Bei der Anschrift der Verfügungsbeklagten handelt es sich nicht um Geschäftsräume des Herrn Nourbakhsch i.S.v. § 178 Abs. 1 Nr. 2 ZPO. Geschäftsraum i.S.v. § 178 Abs. 1 Nr. 2 ZPO ist der für die Geschäftstätigkeit gerade des Zustellungsempfängers bestimmte Raum (Baumbach/Lauterbach/Albers/Hartmann, ZPO, 69. Auflage, 2011, § 178 Rdnr. 16; BGH NJW-RR 2010, 489 (490) Rdnr. 15). Der Zustellungsempfänger selbst muss unter der Adresse ein Geschäftslokal unterhalten (BGH NJW 1998, 1958 (1959)). Da Herr Nourbakhsch in den Räumen der Verfügungsbeklagten wie oben dargestellt, als Angestellter keiner eigenen Geschäftstätigkeit nachgeht, scheidet schon aus diesem Grund eine Ersatzzustellung an die Adresse der Verfügungsbeklagten aus.

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 18 of 23 PageID 175
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 65 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 17 of 22

BAUMGARTENBRANDT

Da vor der Ersatzzustellung auch kein Zustellversuch an den Zustellungsadressaten persönlich unternommen wurde, scheidet eine Ersatzzustellung gem. § 178 Abs. 1 Nr. 2 ZPO, § 180 S. 1 ZPO ebenfalls aus.

Eine Zustellung gem. § 172 Abs. 1 ZPO an die Verfügungsbeklagte als Prozessbevollmächtigte des Herrn Nourbakhsch ist ebenfalls nicht wirksam erfolgt, da die Verfügungsbeklagte nicht Prozessbevollmächtigte des Herrn Nourbakhsch war oder ist. Zwar hat sich die Verfügungsbeklagte in der vorgerichtlichen Abmahnung zur Vertreterin des Herrn Nourbakhsch bestellt, diese Bestellung erstreckt sich jedoch nicht auf das gerichtliche Verfügungsverfahren. Das mit der Zustellung der einstweiligen Verfügung beginnende gerichtliche Verfahren ist gegenüber der vorgerichtlichen anwaltlichen Korrespondenz über eine Abmahnung ein neuer Abschnitt und hiervon zu trennen (OLG Hamburg NJW-RR 1993, 958; Musielak, ZPO, 7. Auflage 2009, § 172, Rdnr. 2).

Da der Beschluss Herrn Nourbakhsch gegenüber nicht vollzogen wurde, ist dieser nicht mehr Partei des Verfahrens und kann damit als Zeuge vernommen werden. Wie das Kammergericht entschieden hat, kann ein Streitgenosse, der zwar erstinstanzlich Partei des Verfahrens war, aber mangels Berufung nicht Partei des von einem anderen Streitgenossen durchgeführten Berufungsverfahrens ist, als Zeuge vernommen werden (KG, MDR 1981, 765). Ebenso hat das OLG Koblenz entschieden (OLG Koblenz, NJW-RR 2003, 283). Die gleiche Folge muss für Antragsgegner einer einstweiligen Verfügung gelten, die mangels Vollziehung der Verfügung nicht mehr Partei des Verfahrens sind.

**b.   Zustellung des Beschlusses an die Verfügungsbeklagte ohne Antragsschrift**

Auch der Verfügungsbeklagten gegenüber haben die Verfügungskläger die Verfügung nicht vollzogen. Zur Vollziehung hätte es neben der Zustellung des Beschlusses auch der Zustellung des Verfügungsantrages bedurft, denn der Beschluss des LG Berlin vom 10.02.2011 ist aus sich heraus, ohne die Antragsschrift, nicht verständlich.

Im Beschluss wird mehrfach auf den Antrag Bezug genommen. So wird bereits in der Kostenentscheidung die Bezifferung laut Antragsschrift vorgenommen. Der Verfügungsbeklagten ist damit nicht bekannt, auf welche Punkte des Tenors im Beschluss sich die Teilstreitwerte beziehen. Darüber hinaus wird in den Entscheidungsgründen auf S. 5, 3. Absatz zum Teilantrag zu 2.d) der Antragsschrift Stellung genommen, ohne dass der Verfügungsbeklagten deutlich wird, um welchen Antrag es sich dabei handelt und welche Äußerung danach unlauter nach § 4 Nr. 10 UWG sein soll.

In Fällen, in denen eine Beschlussverfügung im Tenor oder auch nur in ihren Gründen auf die Antragsschrift Bezug nimmt, ist die Antragsschrift der Verfügung beizufügen (LG Wuppertal, Urteil vom 18.03.2009, Az.: 3 O 480/08). Erst recht gilt dies, wenn die Verfügung auf die Antragsschrift Bezug nimmt und die Verfügung aus sich heraus nicht verständlich ist (OLG Celle, Urteil vom 03.02.1999, Az.: 2 U 279/98, juris).

**2.   Kein Verfügungsanspruch**
**a.   Kein Wettbewerbsverhältnis zwischen den Parteien**

Zwischen den Verfügungsklägern und der Verfügungsbeklagten besteht kein Wettbewerbsverhältnis. Eine Mitbewerbereigenschaft der Verfügungsbeklagten nach § 8 Abs. 3 Nr. 2 und 3 UWG scheidet von vornherein aus. Die Verfügungsbeklagte ist aber auch

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 19 of 23 PageID 176
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 66 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 18 of 22

**BAUMGARTENBRANDT**

nicht Mitbewerberin der Verfügungskläger nach § 8 Abs. 3 Nr. 1 UWG. Allein die Tatsache, dass sowohl die Verfügungsbeklagte als auch die Verfügungskläger auf dem Gebiet der Verfolgung von Urheberrechtsverletzungen tätig sind, führt nicht dazu, dass diese Mitbewerber i.S.v. § 8 Abs. 3 Nr. 1 UWG sind. Mitbewerber in diesem Sinne sind lediglich Unternehmen, die gleiche oder gleichartige Waren oder Dienstleistungen innerhalb desselben Abnehmerkreises abzusetzen versuchen (BGH GRUR 2007, 884 Rdnr. 35 – Cambridge Institute; BGH GRUR 2007, 1079 Rdnr. 18 – Bundesdruckerei; BGH GRUR 2009, 845 Rdnr. 40 – Internet-Videorecorder; BGH GRUR 2009, 980 Rdnr. 9 – E-Mail-Werbung II). Davon, dass die Verfügungsbeklagte und die Verfügungskläger gleiche oder auch nur gleichartige Dienstleistungen anbieten, kann nicht die Rede sein. Die Verfügungskläger bieten Ermittlungsdienstleistungen im Internet an. Die Verfügungsbeklagte bietet dagegen ausschließlich Rechtsberatung und –vertretung an. Die Tatsache, dass sich die Dienstleistungen beider Parteien auf Urheberrechtsverletzungen beziehen, ändert an der Verschiedenartigkeit der Dienstleistungen nichts.

**b.   Äußerung gegenüber Frau Mudge weder eine Behauptung noch eine Behinderung von Mitbewerbern**

Durch die gegenüber Frau Mudge getätigten Äußerungen wurden weder Tatsachen i.S.d. § 4 Nr. 8 UWG behauptet, noch Mitbewerber nach § 4 Nr. 10 UWG behindert. Da Frau Mudge Mitarbeiterin der Verfügungsklägerin zu 1) ist, sind die ihr gegenüber getätigten Äußerungen der Verfügungsklägerin nach § 166 BGB analog zuzurechnen.

Behauptungen gem. § 4 Nr. 8 UWG müssen aber gegenüber Dritten aufgestellt werden. Der von der Äußerung betroffene Mitbewerber selbst gehört nicht zu Dritten in diesem Sinne. Äußerungen, die ihm gegenüber aufgestellt werden, sind nicht geeignet, den Absatz oder den Bezug des betreffenden Unternehmens zu fördern oder zu behindern. Dies wäre nur bei Äußerungen gegenüber Personen der Fall, die nicht „im Lager" der Verfügungskläger stehen.

Gleiches gilt hinsichtlich der Unlauterkeit nach § 4 Nr. 10 UWG. Eine Behinderung ist ausgeschlossen, wenn sie durch Äußerungen gegenüber dem von der Äußerung betroffenen Unternehmen erfolgt. In diesem Fall ist die Äußerung nicht geeignet, zu einer Behinderung des Mitbewerbers zu führen.

**c.   Kein Unterlassungsanspruch zu den streitgegenständlichen Aussagen**
**aa.   Beweiswert der eidesstattlichen Erklärung von Frau Barbara Mudge**

Angesichts der verkürzten, „sinngemäßen" und unzutreffenden Darstellung des Inhalts des Telefonats zwischen Frau Mudge und Herrn Nourbakhsch kommt der eidesstattlichen Erklärung von Frau Mudge keinerlei Beweiswert zu.

**bb.   Zur Aussage im Tenor Punkt 1. a) – Diebstahl der Software**

Hinsichtlich der Äußerung unter Punkt 1.a) des Tenors besteht seitens beider Verfügungskläger kein Unterlassungsanspruch. Die Voraussetzungen des § 4 Nr. 8 UWG und des § 823 Abs. 2 BGB i.V.m. § 186, 187 StGB liegen nicht vor. Da Herr Nourbakhsch niemals behauptet hat, dass der Verfügungskläger zu 2) die von der Verfügungsklägerin zu 1) genutzte Software gestohlen habe, hat er schon keine unwahre Tatsache verbreitet.

Im Übrigen handelt es sich bei den Äußerungen des Herrn Nourbakhsch gegenüber Frau Mudge als Vertreterin oder zumindest Bevollmächtigte der Mandantin der Verfügungs-

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 20 of 23 PageID 177
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 67 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 19 of 22

BAUMGARTENBRANDT

beklagten, Foresight Unlimited um vertrauliche Mitteilungen, an denen die Mandantin der Verfügungsbeklagten ein berechtigtes Interesse hatte, § 4 Nr. 8, 2. HS UWG. Die Kommunikation zwischen Anwalt und Mandant unterliegt gem. § 43 a Abs. 2 BRAO dem Anwaltsgeheimnis. Auf europäischer Ebene ist das Anwaltsgeheimnis gem. Art. 8 Abs. 1 EMRK (Schutz der Korrespondenz) i.V.m. Art. 6 Abs. 1 und 3 Buchst. c EMRK (Recht auf ein faires Verfahren) sowie aus Art. 7 Charta der Grundrechte der Europäischen Union (Achtung der Kommunikation) i.V.m. Art. 47 Abs. 1, Abs. 2 Satz 2 und Art. 48 Abs. 2 Charta der Grundrechte der Europäischen Union (Recht auf Beratung, Verteidigung und Vertretung, Achtung der Verteidigungsrechte) geschützt. Den Schutz des Anwaltsgeheimnisses hat der EuGH ausdrücklich festgestellt (EuGH in: NJW 1983, 503). Die dem Anwaltsgeheimnis unterliegende Kommunikation ist als vertraulich und privilegiert einzuordnen. Zudem folgt die Vertraulichkeit der Mitteilung auch aus der Tatsache, dass die Äußerungen des Herrn Nourbakhsch nur an einen Empfänger und nicht gleichzeitig an eine Vielzahl von Adressaten erfolgt sind. Solche Mitteilungen sind nach Ansicht des BGH als vertraulich einzustufen (BGH GRUR 1960, 135 (136) – Druckaufträge).

Herr André Nourbakhsch wie auch die Mandantin der Verfügungsbeklagten Foresight Unlimited hätten ansonsten ein berechtigtes Interesse an der Mitteilung gehabt. Bei der Interessenabwägung ist zu berücksichtigen, ob der Mitteilende gesetzlich oder vertraglich zur Mitteilung der Tatsachen berechtigt oder verpflichtet ist (Köhler/Bornkamm, UWG, 29. Auflage, 2011, § 4, Rdnr. 8.23). Herr Nourbakhsch war als Rechtsanwalt zur Wahrung der Interessen seiner Mandantin Foresight Unlimited berufen und verpflichtet. Dies folgt unmittelbar aus den gesetzlichen und vertraglichen Benachrichtigungs- und Warnpflichten des Rechtsanwaltes (Kleine-Cosack, BRAO, 6. Auflage, Anhang I 1, § 11 BORA). Ein Unterlassen dieser Pflichten hätte die Verfügungsbeklagte einer potentiellen Haftpflicht gegenüber ihren Mandanten ausgesetzt. Dies von vornherein zu unterbinden ist nicht nur Recht, sondern auch Pflicht des Anwalts.

Das Interesse der Mandanten der Verfügungsbeklagten an den streitgegenständlichen Informationen ist wegen der Vielzahl der betroffenen Fälle, die unter Verwendung der Ermittlungs-Software „Observer" der Verfügungsklägerin zu 1) bearbeitet werden, als sehr hoch einzustufen.

**cc.**  **Zur Aussage im Tenor Punkt 1. b) aa) – Unzuverlässige Rechercheleistungen**

Hinsichtlich der Äußerung unter Punkt 1.b) aa) des Tenors besteht seitens beider Verfügungskläger ebenfalls kein Unterlassungsanspruch. Die Voraussetzungen des § 4 Nr. 8 UWG und des § 823 Abs. 2 BGB i.V.m. § 186, 187 StGB liegen auch hier nicht vor. Die Verfügungsklägerin zu 1) hat unzuverlässige Rechercheleistungen erbracht, sodass es sich bei der streitgegenständlichen Aussage um eine wahre Tatsache handelt.

Im Übrigen handelt es sich auch hier bei den Äußerungen des Herrn Nourbakhsch gegenüber Frau Mudge als Vertreterin der Mandantin der Verfügungsbeklagten Foresight Unlimited um vertrauliche Mitteilungen, an denen sowohl die Mandantin der Verfügungsbeklagten als auch die Verfügungsbeklagte aus den gleichen Gründen ein berechtigtes Interesse haben, § 4 Nr. 8, 2. HS UWG.

Exhibit 7
Seite 19 von 22

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 21 of 23 PageID 178
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 68 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 20 of 22

⊛ BAUMGARTENBRANDT

### dd.  Zur Aussage im Tenor Punkt 1. b) bb) – Sammelklage in den USA anhängig

Auch hinsichtlich der Äußerung unter Punkt 1.b) bb) des Tenors besteht seitens beider Verfügungskläger kein Unterlassungsanspruch. Die Voraussetzungen des § 4 Nr. 8 UWG und des § 823 Abs. 2 BGB i.V.m. § 186, 187 StGB liegen nicht vor. Herr Nourbakhsch hat keine unwahre Tatsache verbreitet.

Wie oben dargestellt, ist gegen die Verfügungsklägerin zu 1) in den USA eine Sammelklage sogar im Namen von 4.576 Personen anhängig. Anhängigkeit bedeutet, dass die Klage bei Gericht eingegangen ist, Rechtshängigkeit, dass sie den Beklagten zugestellt worden ist. Herr Nourbakhsch hat nicht von Rechtshängigkeit gesprochen, sondern lediglich davon, dass gegen die Verfügungsklägerin zu 1) eine Klage anhängig gemacht wurde. Die Frage, ob die Klage an die Verfügungsklägerin zu 1) zugestellt worden ist, ist daher nicht entscheidungserheblich.

Im Übrigen handelt es sich bei den Äußerungen des Herrn Nourbakhsch gegenüber Frau Mudge als Vertreterin der Mandantin der Verfügungsbeklagten Foresight Unlimited wiederum um vertrauliche Mitteilungen, an denen die Mandantin der Verfügungsbeklagten ein berechtigtes Interesse hat, § 4 Nr. 8, 2. HS UWG. Auf die obigen Ausführungen dürfen wir verweisen.

### ee.  Zum Tenor Punkt 1. b) cc)

Punkt 1.b) cc) der Beschlussverfügung ist schon wegen mangelnder Bestimmtheit gem. § 253 Abs. 2 Nr. 2 ZPO aufzuheben. Aus dem Tenor wird nicht deutlich, von welchem Vertragsverhältnis die Rede ist. Es ist möglich, dass das Vertragsverhältnis der Verfügungsklägerin zu 1) zur Verfügungsbeklagten gemeint ist. Der Tenor lässt sich aber auch so auslegen, dass mit „Vertragsverhältnis" die vertraglichen Beziehungen der Verfügungsklägerin zu 1) zu deren Kunden gemeint sein sollen.

Zudem wird durch den Verweis im Tenor auf die eidesstattliche Erklärung von Frau Barbara Mudge nicht klar, in welchen Fällen der Verfügungsbeklagten die Kontaktaufnahme zu Kunden der Verfügungsklägerin zu 1) untersagt ist. Soll eine Kontaktaufnahme zum Anbieten einer Zusammenarbeit ohne Mitwirkung der Verfügungsklägerin zu 1) nur dann untersagt sein, wenn dabei eine der in den Punkten 1. a), 1. b) aa) bis cc) untersagten Äußerungen getätigt wird, oder nur, wenn alle diese Äußerungen getätigt werden? Worin liegt in ersterem Fall der inhaltliche Unterschied des Tenors in Punkt 1 b) cc) zu den übrigen Punkten des Tenors? Punkt 1. b) cc) des Tenors ist mangels Bestimmtheit nicht vollstreckbar.

Sollte mit „Vertragsverhältnis" in Punkt 1. b) cc) des Tenors der Vertrag zwischen der Verfügungsklägerin zu 1) und der Verfügungsbeklagten gemeint sein, würde der Unterlassungsanspruch der Verfügungsklägerin zu 1) aus § 8 Abs. 1 i.V.m. §§ 3, 4 Nr. 10 UWG materiellrechtlich daran scheitern, dass das Vertragsverhältnis zwischen den Parteien seit dem 21.01.2011 beendet ist. Allein die Tatsache, dass die Verfügungsbeklagte nach Beendigung ihres Vertrages zur Verfügungsklägerin zu 1) Kontakt zu deren Kunden aufnimmt, führt noch nicht zur Unlauterkeit nach § 4 Nr. 10 UWG. Denn das Abwerben von Kunden gehört zum Wesen des freien Wettbewerbs, und zwar auch dann, wenn es zielbewusst und systematisch (planmäßig) geschieht und die Kunden noch vertraglich an den Mitbewerber gebunden sind. Es ist daher grds. nicht zu beanstanden, wenn ein Unternehmer auf eine Vertragsauflösung unter Einhaltung der gesetzlichen oder vertraglichen Bestimmungen (Kündigungs-, Anfechtungs- oder Widerrufsfristen)

Exhibit G 20

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 22 of 23 PageID 179
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 69 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 21 of 22

BAUMGARTENBRANDT

hinwirkt und zu eigenen Wettbewerbszwecken ausnutzt. Unlauter wird das Einbrechen in fremde Vertragsbeziehungen erst durch das Hinzutreten besonderer Umstände (Köhler/Bornkamm, UWG, 29. Auflage, 2011, § 4, Rdnr. 10.33 m.V.a. BGH GRUR 1997, 920 (921) – Automatenaufsteller; BGH GRUR 2002, 548 (549) – Mietwagenkostenersatz; BGH GRUR 2004, 704 (705) – Verabschiedungsschreiben). Verwertet daher etwa ein ausgeschiedener Handelsvertreter Kundenadressen, die in seinem Gedächtnis geblieben sind, so liegt kein wettbewerbswidriges Verhalten vor (BGH GRUR 1999, 934 (935) – Weinberater).

Auch in dem Fall, dass zwischen der Verfügungsklägerin  zu 1) und der Verfügungsbeklagten noch ein Vertragsverhältnis bestehen würde, bestünde aber kein Unterlassungsanspruch.

Allein die Tatsache, dass die Verfügungsbeklagte zu möglichen Kunden der Verfügungsklägerin zu 1) Kontakt aufnimmt, um diesen eine weitere Zusammenarbeit ohne Mitwirkung der Verfügungsklägerin zu 1) anzubieten, führt noch nicht zur Unlauterkeit. Wie oben dargestellt, hat Frau Barbara Mudge im Auftrag oder zumindest mit Befugnis einer Mandantin der Verfügungsbeklagten, des von Herrn Mark Damon vertretenen Unternehmens Foresight Unlimited, mit Herrn Nourbakhsch telefoniert. Die Kenntnis der Kontaktdaten zu Herrn Mark Damon beruhte dabei nicht auf der Vertragsbeziehung der Verfügungsbeklagten mit der Verfügungsklägerin zu 1), sondern auf der Mandatsbeziehung der Verfügungsbeklagten mit dem Unternehmen Foresight Unlimited. Es ist daher nicht so, dass die Verfügungsbeklagte ihr anvertraute oder von ihr rechtswidrig beschaffte Kundenadressen verwendet und damit ihr nicht zustehende Ressourcen nutzt. Der vorliegende Fall ist nicht mit solchen Fällen vergleichbar, in denen Beschäftigte noch während des Beschäftigungsverhältnisses an Kunden des Arbeitgebers herantreten, um sie als künftige Kunden für das eigene oder ein fremdes Unternehmen zu gewinnen.

Davon unabhängig ist allein entscheidend, dass die Verfügungsbeklagte lediglich ihre Mandanten kontaktiert hat. Dass diese auch gleichzeitig Kunden der Verfügungsklägerin zu 1) sind, bzw. waren, spielt keine Rolle.

Darüber hinaus hat Herr Nourbakhsch wie bereits ausgeführt, den Kunden der Verfügungsklägerin zu 1) in keiner Weise Dienstleistungen oder Unternehmen wie die Verfügungsklägerin zu 1) zugeführt oder angeboten, weder unmittelbar, noch mittelbar.

Nach alledem ist die einstweilige Verfügung aufzuheben.

Sollte das Gericht der Ansicht sein, dass der Vortrag der Verfügungsbeklagten unzureichend oder ergänzungsbedürftig ist, bitten wir um einen entsprechenden Hinweis des Gerichts. In diesem Fall wird die Verfügungsbeklagte gerne ausführlich ergänzend vortragen.

Sollte das Gericht eine beglaubigte Übersetzung der **Anlagen AG 3, 19 und 20** benötigen, wird ebenfalls um einen richterlichen Hinweis gebeten.

Die Zustellung an die Verfügungskläger erfolgt gem. § 174 ZPO von Anwalt zu Anwalt.

Susanne Preuß
Rechtsanwältin

Case 8:14-cv-00657-MSS-AEP   Document 11-10   Filed 05/30/14   Page 23 of 23 PageID 180
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 70 of 270
Case 1:10-cv-12043-GAO   Document 55-8   Filed 06/13/11   Page 22 of 22

⊕ BaumgartenBrandt

## Anlagen

| | |
|---|---|
| AG 1 | Auszug aus dem Register des Companies' House |
| AG 2 | Handelsregisterauszug zu der Verfügungsklägerin zu 1) |
| AG 3 | Eidesstattliche Erklärung des Verfügungsklägers zu 2) vor dem United States District Court for the District of Columbia vom 31.12.2009 (Az: CA. 1:10-cv-00453-RMC) in englischer Sprache |
| AG 4 | Eidesstattliche Erklärung des Verfügungsklägers zu 2) |
| AG 5 | Kündigungsschreiben der Verfügungsbeklagten vom 21.01.2011 mit Sendebericht der Faxversendung vom 21.01.2011, 20:07 Uhr |
| AG 6 | Telefax des Kündigungsschreibens der Verfügungsklägerin zu 1) vom 25.01.2011, 14:37 Uhr |
| AG 7 | E-Mail von Frau Barbara Mudge vom 25.02.2011 |
| AG 8 | Eidesstattliche Erklärung des Herrn Richard Schneider, Mitglied des Verwaltungsrates der Logistep AG |
| AG 9 | Handelsregisterauszug der Logistep AG |
| AG 10 | Eidesstattliche Erklärung des Herrn Michael Wicher, Mitarbeiter der Logistep AG |
| AG 11 | Eidesstattliche Versicherung des Herrn Leszek Oginski, Direktor der Logistep AG |
| AG 12 | E-Mail des Verfügungsklägers zu 2) vom 10.12.2008 |
| AG 13 | E-Mail des Verfügungsklägers zu 2) vom 30.11.2010 |
| AG 14 | E-Mail des Herrn Nourbakhsch vom 12.01.2011 mit Anhängen |
| AG 15 | E-Mail des Verfügungsklägers zu 2) vom 14.01.2011 |
| AG 16 | Darstellung der Referenzkunden der ipoque GmbH unter deren Internetpräsenz auf http://www.ipoque.com/company/customer-references |
| AG 17 | Powerpoint-Präsentation der ipoque GmbH „Fakten zur Abmahnung „Antichrist", BaumgartenBrandt an ipoque, 18.11.2009" vom 13.01.2011 |
| AG 18 | Abmahnung an die ipoque GmbH vom 27.04.2010 |
| AG 19 | Sammelklage von 4.576 Klägern u.a. gegen die Verfügungsklägerin zu 1), online gestellt unter http://boothsweet.com/wp-content/uploads/2010/08/Master-Complaint1.pdf von den Rechtsanwälten BOOTH SWEET LLP |
| AG 20 | Mitteilung des United States District Court, District of Massachsetts an die Beklagten über den Eingang einer Klage vom 26.11.2010 |