# EXHIBIT M

EXHIBIT M

Fotokopie

No du dossier de la Cour : T-

COUR FÉDÉRALE

ENTRE :

VOLTAGE PICTURES LLC

Demanderesse

-ET-

M. OU MME UNTEL

Défendeurs

COUR FÉDÉRALE / FEDERAL COURT
DÉPOSÉ / FILED
AOUT / AUG 2 4 2011
MARIE-EVE LAROCHE
MONTRÉAL, QC

### AFFIDAVIT OF DANIEL ARHEIDT

I, Daniel Arheidt, a consultant of IPP Limited, of the City of Hamburg, Germany,

AFFIRM THAT:

1. I am a consultant in the litigation support department of IPP Limited ("IPP"), a German company that provides forensic investigation services to copyright owners.

2. As part of my duties for IPP, I routinely identify the Internet Protocol ("IP") addresses used by people who download, reproduce and distribute copyrighted works using the BitTorrent Protocol.

3. IPP has developed a proprietary technology platform that provides an effective means to detect the unauthorized distribution of movies and other audiovisual content over P2P networks by members of those networks who use a BitTorrent protocol.

4. Voltage Pictures LLC hired IPP to determine whether its film, *Hurt Locker*, was being copied and distributed by Canadian members of peer-to-peer ("P2P") online networks.

*The BitTorrent Protocol*

5. The BitTorrent protocol allows even small computers with low bandwidth to participate in large data transfers across a P2P network.

Exhibit M - 1

6. The initial file-provider will choose to share a file with a P2P network. This initial file is called a "seed."

7. Other P2P network users ("peers") connect to the seed file if they wish to copy it.

8. The BitTorrent protocol breaks a file into packets, which are individually downloaded to a peer. The protocol also directs each new peer to the most readily available packet. In this way, a peer will not copy a file directly and solely from the seed but may download individual packets from any peer who has previously copied the file and who has made it available to the P2P network.

9. As more and more peers request the same file, each additional peer automatically becomes a source for those packets of a file that he has copied. This speeds up the time it takes to download a file and frees up the capacity of a computer or server that would otherwise have to send a complete, large file to each peer.

10. Every peer who is copying or who has copied a file is simultaneously distributing it to every other peer.

*Hurt Locker*

11. Voltage Pictures LLC retained IPP to identify the IP addresses being used to reproduce and/or distribute Plaintiff's copyrighted works using the BitTorrent Protocol.

12. IPP asked me to implement, monitor, analyze, and attest to the results of, the investigation.

13. I ran forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology, which scans P2P networks for the presence of copyrighted material.

14. The software searched P2P networks for files corresponding to *Hurt Locker* and then identified the peers who were offering the file for transfer or distribution. This information is available to anyone that is connected to the P2P network.

15. Once the software identified that *Hurt Locker* was being distributed over a particular P2P network, we obtained the internet protocol ("IP") address of each peer who was reproducing and/or distributing the movie. When available, we also obtained the peer's pseudonym or network name and examined the peer's publicly available directory for other files that lexically match *Hurt Locker*.

16. We then downloaded the copy of *Hurt Locker* that the peer was offering to the P2P network and distributing via the BitTorrent protocol.

17. At the same time, we downloaded other publicly available information to assist in identifying the peer. For instance, for every file we download, we are able to

record: (a) the date and time at which the file was distributed by the peer; (b) the IP address assigned to the peer by his internet service provider at the time of the distribution; (c) the video file's metadata, such as title and file size, that is not part of the video content but that is attached to the digital file.

18. We then created evidence logs for each peer and stored this information in a central database.

19. Schedule A to this affidavit ("Schedule A") lists those IP addresses and related information that was discovered during the *Hurt Locker* investigation.

*IP Addresses*

20. An IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP").

21. ISP's are assigned blocks or ranges of IP addresses. The range assigned to any ISP can be found in publicly available databases on the internet.

22. ISP's keep track of the IP addresses assigned to its customers at any given moment and retain "user logs" for a limited amount of time. These user logs provide an accurate means to match an IP address with a specific customer.

23. IPP can use IP addresses to track a peer to a particular ISP and, sometimes, to a particular geographic region. We determined that the defendants listed at Schedule A were customers of three Canadian ISP's: Bell Canada, Cogeco Câble inc., and Videotron s.e.n.c.

24. Once provided with the IP address, plus the date and time of the detected and documented activity, ISPs can use their subscriber logs to identify the names and addresses of their clients who acted as peers to copy and distribute unauthorized versions of *Hurt Locker*.

25. Only an ISP can correlate the IP address to the real identity of its subscriber.

*Confirmation of Copied and Distributed Material*

26. I personally extracted the data gathered from this *Hurt Locker* investigation.

27. After reviewing the evidence logs, I isolated the transactions and the IP addresses being used on the BitTorrent P2P network to reproduce and distribute *Hurt Locker*.

28. The IP addresses, hash values and hit dates contained in Exhibit A correctly reflect what is contained in the evidence logs.

29. In addition to identifying the labels and metadata attached to the P2P files to determine that a peer identified at Schedule A has copied and distributed *Hurt Locker*, IPP analyzed each BitTorrent "piece" distributed by the IP addresses listed at Exhibit A and verified that reassembling the pieces results in a fully playable digital motion picture.

30. I was provided with a control copy of the *Hurt Locker*, which members of my team viewed side-by-side with the digital media files set forth at Exhibit A and confirmed that they were the same.

Affirmed before me at the City of )
Karlsruhe, Germany, on 08-24-2011 )
                                  )
_____   )
                                  )
                                  )
*[signature]*                     )
Dr. Joachim Mellmann              )          *[signature]*
Notar                             )          _____
Commissioner for Taking Affidavits)          Daniel Arheidt

*[Seal: DR. JOACHIM MELLMANN NOTAR IN KARLSRUHE]*

This is Exhibit "A" referred to in the Affidavit of Daniel Arheidt, affirmed before me this 24th day of August, 2011.

*[signature]*

Dr. Joachim Mellmann
Notar
---
A Commissionner for Taking Affidavits

*[seal: DR. JOACHIM MELLMANN · NOTAR IN KARLSRUHE]*