# **EXHIBIT S**

EXHIBIT S

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | * | |
| **Plaintiff,** | * | CASE NO. 8:13-cv-00360-RWT |
| v. | * | |
| **JOHN DOE subscriber assigned IP address 68.50.250.243,** | * | |
| | * | |
| **Defendant.** | * | |

**PLAINTIFF'S WRITTEN RESPONSE TO THE COURT'S
MEMORANDUM/ORDER [CM/ECF 9]**

I.  INTRODUCTION

Malibu Media, LLC ("Malibu Media") appreciates the opportunity to discuss the issues raised in this Court's order dated March 1, 2013. For the reasons set forth in Plaintiff's Memorandum Explaining Why It Has a Clear and Undeniable Right to Issue a Rule 45 Subpoena, Plaintiff has a clear, absolute, and undeniable right to subpoena the identities of the Doe Defendants in the subject cases.[1] Indeed, since this case was filed, Plaintiff has received orders allowing it to subpoena Internet Service Providers ("ISP"s) in 80 individual John Doe suits throughout the country. *See* Exhibit A. No court has *ever* denied Plaintiff's motion to subpoena the identity of a John Doe Defendant who was sued individually in a BitTorrent copyright infringement lawsuit. Here, it is Plaintiff's sincere hope that once leave is granted to issue the subpoenas, that this process will reduce the number of frivolous motions attempting to quash the subpoenas. Plaintiff also appreciates that the scheduled hearing, wherein defense counsel and ISPs have been invited to discuss their concerns and to collaborate on an efficient

---

[1] If the Court denies Plaintiff the right to subpoena the ISP in order to obtain the Doe Defendant's identity, Plaintiff respectfully requests the Court certify the issue to the Fourth Circuit.

1

process for managing these cases, has the potential of reducing the amount of work for all concerned. And, Plaintiff looks forward to working cooperatively the Court, the ISPs and the defense counsel to establish efficient case management procedures.

II. **RESPONSE TO THE COURT'S QUESTIONS**

A. **Malibu Media's affiliation with Patrick Collins, Inc., Third Degree Films, Inc., K-Beech, Inc., Hard Drive Productions, Inc., Raw Films, Ltd., and/or AF Holdings, LLC**

Malibu Media, Patrick Collins, Inc., Third Degree Films, Inc., K-Beech, Inc. and Raw Films, Ltd. *have* used the same attorneys, investigator and litigation support personnel. These movie studios are not related in any other way. Going forward, undersigned only intends to file suits on behalf of Plaintiff. Accordingly, Plaintiff will soon have *no* connection with the other studios.

Plaintiff has no connection with Hard Drive Productions, Inc., AF Holdings, LLC, the Copyright Enforcement Group or any other group that has or is filing BitTorrent copyright infringement suits in the United States.

Plaintiff is keenly aware that other enforcement groups have tarnished the reputation of copyright owners who sue for BitTorrent copyright infringement. Indeed, AF Holdings, LLC is currently under investigation for fraudulently using its founder, John Steele's, gardener's name as AF Holdings, LLC's manger, with the gardener's knowledge. Evan Stone was sanctioned by a District Court in Texas for sending a subpoena to an ISP after the court denied his client the right to do so except as to Doe 1 in a joined suit. And, that sanction was upheld on appeal. Almost all of the other groups who have litigated BitTorrent copyright infringement cases began their enforcement efforts by relying on long-arm jurisdiction to sue 100s or 1000s of infringers in one federal court suit brought in a district where the majority of the Doe Defendants did not reside. Neither Plaintiff nor anyone with whom it has worked has relied on federal long arm

2

jurisdiction to sue Doe Defendants for copyright infringement in jurisdictions where those Defendants do not reside. Instead, Plaintiff has scrupulously adhered to the most stringent interpretations of the law as articulated by the majority of the District Courts across the country. And, informed Courts across the country have recognized and appreciated that Plaintiff has acted within the law and ethically during these cases.

One of the bedrock principals of the entire social structure of the United States and the Judeo-Christian ethics upon which that structure was founded is that we are to evaluate every person by his or her actions, without allowing our opinions of person A to be affected by the actions of person B.[2] That is particularly true when, as here, Person A and Person B have no affiliation with each other. With this in mind, Plaintiff respectfully requests that the Court not allow the alleged bad acts of some other lawyers, copyright owners or copyright enforcement groups to color its opinion of Plaintiff or the propriety of Plaintiff's copyright enforcement efforts.

Regarding the propriety of Plaintiff's enforcement efforts, during her tenure as the U.S. Register of Copyrights, Mary Beth Peters explained the rights of adult entertainment companies to proceed with these suits against the individual infringers by stating: "[t]he law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement and copyright owners have every right to invoke the power of the courts to combat such activity. Every court that has addressed the issue has agreed that this activity is infringement." See Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003), available at

---

[2] "You reward everyone according to what they have done." Psalm 62:12
"I the LORD search the heart and examine the mind, to reward each person according to their conduct, according to what their deeds deserve." Jeremiah 17:10

3

http://www.copyright.gov/docs/regstat090903.html (emphasis added).  Ms. Peters concluded that copyright owners have no reason to apologize for enforcing their rights in this manner.  *Id*.  Plaintiff has consistently and without exception striven to make sound legal and factual arguments and has no reason whatsoever to apologize for its enforcement activities.  To the contrary, Plaintiff is extremely proud of the good and honorable work it is doing enforcing its copyrights and deterring infringement.

**B. Other Methods to Determine if a John Doe as a Subscriber is the Infringer**

    **1. A Rule 45 Subpoena is the Only Federal Procedure for Obtaining the John Doe Defendants' Identities**

A Rule 45 subpoena is the only legal process available under federal law to ascertain the identities of the John Doe defendants.  To explain, "[i]n June 2003, the RIAA (Recording Industry Association of America) announced a nationwide effort to identify and sue individuals committing copyright using P2P systems."  In re Charter Communications, Inc. Subpoena Enforcement Matter, 393 F.3d 771, 774 (8th Cir. 2005).  Just as is the case here, the RIAA could identify the IP Addresses of the alleged infringers but could not identify the infringers by name without the assistance of the ISP that assigned the infringers their IP Addresses.  The RIAA began its enforcement campaign by requesting federal Clerks of Courts to issue subpoenas pursuant to Section 512(h) of the Digital Millennium Copyright Act ("DCMA" or the "Copyright Act").  The RIAA would then serve a Section 512(h) subpoena on the ISP that assigned the Doe Defendant his or her IP address.

Section 512(h) provides for a comparatively easy process for obtaining the names of infringers vis-à-vis John Doe copyright infringement suits.  Indeed, under Section 512(h)(2)(A)-(C), a copyright owner need only file three items with the Clerk of Courts along with its request for a 512(h)(2) subpoena: "(A) a copy of a notification described in subsection (c)(3)(A) [of

4

Section 512]; (B) a proposed subpoena; and (C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to discover the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title." If the Clerk finds that all three items are present then the Clerk must issue a Section 512(h) subpoena.

### a. Verizon and Charter Challenge the 512(h) Subpoena Process

Several of the ISPs to whom the RIAA served Section 512(h) subpoenas moved to quash the subpoenas. These ISPs, including Charter and Verizon, appealed their district court losses to the D.C. and 8th Circuits. The central issue of these two cases was the propriety of serving a Section 512(h) subpoena on an ISP that merely "transmits" as opposed to "stores" data. See RIAA v. Verizon Internet Services, Inc., 351 F.3d 1229 (D.C. Cir. 2003); and In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771 (8th Cir. 2005). "The stakes [were] large for the music, motion picture and software industries. . . ." the D.C. Circuit opined, because the Section 512(h) process was so much easier than a copyright infringement Doe suit. RIAA v. Verizon at 1238; accord In re Charter at FN3 (same.)

In the Verizon and Charter cases, the ISPs argued that a copyright owner cannot serve a Section 512(h) subpoena on an ISP that merely "transmits" data because the copyright owner cannot satisfy the condition precedent required by Section 512(h)(2)(A). Section 512(h)(2)(A) requires that the copyright owner deliver to the Clerk of Courts a copy of the notification described in Section 512(c)(3)(A). And, the ISPs argued, the notification to the ISP must contain "an identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." (Emphasis added.) The ISPs argued that the copyright owner cannot provide them with notice of where the infringing data is located because the infringing data is not located on the ISPs servers; instead,

5

the infringing data is located on the infringers' computers over which the ISPs have no control. Put another way, the ISPs argued that copyright owners cannot send an ISP that merely "transmits" data a DMCA take down notice, which they contended is a condition precedent of using the 512(h) subpoena process.

> **b. The D.C. and Eighth Circuits Held Section 512(h) Subpoenas Cannot Be Served On ISPs that Merely Transmit Data**

Rightly or wrongly, both the D.C. Circuit and the 8th Circuit, over the dissent of several esteemed jurists, agreed with the ISPs. After both Circuits ruled in favor of the ISPs, Section 512(h) subpoenas have not been used.

> **c. The ISPs in this Case Merely Transmit Data**

Almost all of the internet service providers currently in existence, including all of the ones which Plaintiff desires to serve with subpoenas in this case merely "transmit" data. Put another way, Time Warner, AT&T, Cox, Charter, Cable One, Qwest, Clearwire, Verizon, etc. do not keep a copy of the movie on their servers and stream it to the Doe Defendants. Instead, the subject internet service providers merely provide the Doe Defendants with internet access, the cabling and other services necessary for the Doe Defendants to surf and use the internet. For this reason, under the Verizon and Charter decisions, Plaintiff cannot use the easy subpoena process provided by Section 512(h) of the DMCA to obtain the identity of the Doe Defendants from these ISPs.

> **2. Section 512(h) Does Not Preempt a Copyright Owner's Right to Ascertain the Identity of Infringers through a Subpoena Issued Pursuant to Fed.R.Civ.P. 45**

Section 512(h) of the Copyright Act affords copyright owners an easy process to obtain the identities of internet users from ISPs that "store" data. Section 512(h) does not preempt a copyright owner's ability to obtain the identity of infringers through a Rule 45 subpoena from those ISPs that merely "transmit" data.

6

a. **<u>Appellate Courts Hold that the Use of Rule 45 Subpoenas in On-Line Infringement Cases to Identify Anonymous Doe Defendants is Permissible</u>**

Both the Eighth and Second Circuits have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants. The Eight Circuit, during the great debate over whether a Section 512(h) subpoena could be used, held "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." *In re Charter Communications, Inc., Subpoena Enforcement Matter,* 393 F.3d 771, FN3 (8th Cir. 2005). The Eighth Circuit's confirmation that a John Doe suit is proper was the express consolation prize for copyright owners when denied the right to use the easy process afforded by Section 512(h). Similarly, in *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany." By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants.

b. **<u>Prior to Discovery, Plaintiff Cannot Know With 100% Certainty that the Subscriber is the Infringer</u>**

At the onset of a lawsuit, Plaintiff knows that the John Doe defendant's Internet was used to infringe Plaintiff's copyrights. In each of its complaints, Plaintiff alleges that the subscriber is the infringer. For the reasons set forth below, this allegation is plausible. While the subscriber is the infringer in the majority of instances, it is possible that someone other than the subscriber is the infringer. Indeed, the subscriber could be renting his or her house to a person using the subscribers internet to commit an infringement. Alternatively, the subscriber may have relatives or friends living with him or her who use the subscriber's internet and are the infringers. The probability of these occurrences is greatly diminished in the subject suits, however, because the

7

quantum of infringement committed by each of the Doe Defendants expands over of long period of time, and the Doe Defendants likely received DMCA notices from their ISPs alerting them to the instances of infringement. Presumably, a subscriber who is not the infringer but who receives a DMCA notice would reach out to any other person using the subscriber's internet service and cause the infringement to stop. Nevertheless, since there is a possibility that the subscriber is not the infringer, Plaintiff routinely agrees to refrain from publically identifying the John Doe Defendant by name in court papers until after the discovery period has concluded.

C. **Plaintiff's Complaint States a Claim that is Plausible.**

Every court to rule on whether Plaintiff's claims are "plausible" has found in Plaintiff's favor. *See e.g*. *Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013) ("Accepting all factual allegations in the Amended Complaints as true, *Iqbal*, 556 at 678, the Court concludes Plaintiff has stated a claim upon which relief can be granted under the Copyright Act."); *Malibu Media, LLC v. Pelizzo*, 2012 WL 6680387 (S.D. Fla. Dec. 21, 2012) ("[T]aking the allegations in the light most favorable to Plaintiff, the Complaint adequately states a claim of copyright infringement"); *Patrick Collins, Inc. v. Does 1-22*, 2011 WL 5439005 (D. Md. 2011) ("[T]he Court finds that Plaintiff has adequately stated a claim for copyright infringement.") Plaintiffs' complaints have *never* been dismissed pursuant to Rule 12(b)(6).

Further, the Second Circuit found that a copyright holder's suit against an online infringer is "plausible" through a detailed and well thought out analysis under the *Twombly* and *Iqbal* standards. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). In *Arista*, the Court specifically analyzed the requirements asserted by Twombly for pleading an inference of illegal conduct noting "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Id*. citing *Bell Atl*.

8

*Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

> [Although *Twombly* and *Iqbal* require " 'factual amplification [where] needed to render a claim plausible,' " *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ross v. Bank of America, N.A (USA)*, 524 F.3d 217, 225 (2d Cir.2008)), we reject Doe 3's contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible.

*Id*. at 120-121. Likewise, here, Plaintiff's factual allegations in its Complaint are supported by factual assertions in its Exhibits. In support of its Motion for Leave, Plaintiff filed a sworn declaration from its investigator that the technology used to identify the Doe Defendant's IP address is accurate. *See* CM/ECF 4-2. On Exhibit A of Plaintiff's Complaint, Plaintiff demonstrates the dates and time the infringement occurred, the hash files, and the names of the movies infringed. On Exhibit B of Plaintiff's Complaint, Plaintiff demonstrates that its copyrights are properly registered. And on Exhibit C of Plaintiff's Complaint, Plaintiff provides evidence of all the other infringing activity that has taken place through Defendant's Internet. Plaintiff has provided enough factual support for it to be reasonable that the Defendant is the subscriber and the infringer. As stated above, based on the time period and abundance of infringement, causing high bandwidth usage, slow Internet speeds, DMCA notices, and other evidence of infringement taking place on the network, it is reasonable to believe the subscriber, who owns, pays for and is control of the Internet services, would not allow that activity to happen on his or her network unless he or she was committing the infringement.

It is without question that copyright infringement on the Internet is actionable. The Supreme Court in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*. 545 U.S. 913, 125 S.Ct. 2764 (2005), found that Grokster was liable for contributory infringement because it materially aided and induced its users to commit direct infringement via its peer-to-peer file sharing service. Similarly, the First, Second, Seventh, Eighth, Ninth and D.C. Circuits have all held that peer-to-

9

peer infringement is actionable. *See Sony v. Tennenbaum*, 660 F.3d 487 (1st Cir. 2011) holding in a twenty-six (26) page opinion that Tennenbaum was liable for infringement committed through a peer-to-peer network, that peer-to-peer infringement is not "fair use" nor would any other defense shield Tennenbaum's tortious conduct, and that the statutory damages clause set forth in the Copyright Act is constitutional; *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) denying an individual John Doe Defendant's motion to quash a subpoena issued to an internet service provider in response to an allegation that the John Doe Defendant infringed Arista's copyrights through a peer-to-peer file sharing network; *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) upholding a preliminary injunction because Aimster was contributorily liable for its users' direct infringements; *In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005) opining that copyright owners have a right to identify peer-to-peer file sharers through a Rule 45 subpoena because those file sharers *are* infringing the owners' copyrights; *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) "[w]e agree that the plaintiffs have shown that Napster users infringe at least two of the copyright holders' exclusive rights: the rights of reproduction, § 106(1); and distribution, § 106(3);" and *RIAA v. Verizon Internet Services, Inc.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003) repetitively acknowledging that file sharing is infringement. Significantly, "District courts . . . agree . . . that downloading music from the internet, without paying for it or acquiring any rights to it, is a direct violation of the Copyright Act." *UMG Recording, Inc. v. Alburger*, 2009 WL 3152153, *3 (E.D. PA. 2009).

D. *Patrick Collins, Inc. v. Doe 1*, No. 12-cv-1154 (ADS) (GRB), __ F.R.D. __, 2012 WL 5879120, at *4-*5 (E.D.N.Y. Nov. 20, 2012) and Plaintiff's Citations

Plaintiff respectfully suggests that the case cited by this Court, *Patrick Collins, Inc. v. Doe 1*, No. 12-cv-1154 (ADS) (GRB), __ F.R.D. __, 2012 WL 5879120, at *4-*5 (E.D.N.Y.

10

Nov. 20, 2012) is not contrary authority, nor is it controlling authority to this Court. In *Patrick Collins, Inc*. the Eastern District of New York upheld a magistrate's ruling that **_allowed_** Patrick Collins to subpoena an ISP to receive the identifying information of one John Doe defendant. *See Patrick Collins, Inc. v. Doe 1*, 12-CV-1154 ADS GRB, 2012 WL 5879120 (E.D.N.Y. Nov. 20, 2012) ("**ORDERED** that Judge Brown's Report and Recommendation is adopted in its entirety.") Judge Brown's Report and Recommendation granted the plaintiff the ability to subpoena a doe defendant's ISP to receive the doe defendant's identity, because without doing so, a copyright plaintiff would be without a remedy. Indeed, Judge Brown specifically stated, "these plaintiffs are allegedly the owners of copyrighted works who should not be left without any remedy." *In re BitTorrent Adult Film Copyright Infringement Cases*, CIV.A. 11-3995 DRH, 2012 WL 1570765 (E.D.N.Y. May 1, 2012). Likewise, Plaintiff is asking the Court to not leave it without a remedy.

Further, in every single copyright BitTorrent case cited in *Patrick Collins, Inc. v. Doe 1*, a court granted a copyright plaintiff its motion to subpoena at least one John Doe defendant, when personal jurisdiction was proper, as in this case. *See Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 172 (S.D.N.Y. 2012) ("**ORDERED** that Motion for Discovery (Docket No. 5) is **GRANTED** with respect to John Doe 1"; *DigiProtect USA Corp. v. Does*, 10 CIV. 8760 PAC, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) (dismissed on the basis of improper personal jurisdiction); *Media Products, Inc. v. John Does 1-26*, 12 CIV. 3719 HB, 2012 WL 3866492 (S.D.N.Y. Sept. 4, 2012) ("ORDERED that the ISPs shall not turn over any further personal information to Plaintiffs other than as to John Doe 1"); *Patrick Collins, Inc. v. John Does 1 through 37*, 2:12-CV-1259-JAM-EFB, 2012 WL 2872832 (E.D. Cal. July 11, 2012) ("Plaintiff may immediately serve a Rule 45 subpoena on Charter Communications (the ISP listed for the first John Doe in Exhibit A to plaintiff's complaint and in plaintiff's proposed order

11

on the application for expedited discovery) to obtain the following information about that John Doe (based on the IP address listed for him/her—24.182.55.21): name, address, telephone number, and email address); *Digital Sins, Inc. v. John Does 1-245*, 11 CIV. 8170 CM, 2012 WL 1744838 (S.D.N.Y. May 15, 2012) ("I hereby *sua sponte* quash any subpoena that may be outstanding to any internet service provider seeking information about the identity of any John Doe defendant other than John Doe 1"); *Patrick Collins, Inc. v. Does 1-6*, 12 CIV. 2964 JPO, 2012 WL 2001957 (S.D.N.Y. June 1, 2012) ("ORDERED that Plaintiff is allowed to conduct immediate discovery on the ISPs listed in Exhibit B to the Declaration of Tobias Fieser"); *SBO Pictures, Inc. v. Does 1-20*, 12 CIV. 3925 SAS, 2012 WL 2034631 (S.D.N.Y. June 5, 2012) ("As to discovery regarding both Doe 1 and any other Doe defendants against whom claims are re-filed, I adopt the procedures of Judge McMahon and Magistrate Judge Brown"); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012) ("**IT IS HEREBY ORDERED** that Digital Sin may immediately serve a Rule 45 subpoena on the ISPs listed in Exhibit A to the Complaint to obtain information to identify Does 1–176, specifically her or his name, address, MAC address, and email address"); *Media Products, Inc. v. John Does 1-26*, 12 CIV. 3719 HB, 2012 WL 3866492 (S.D.N.Y. Sept. 4, 2012) ("ORDERED that the ISPs shall not turn over any further personal information to Plaintiffs other than as to John Doe 1 in each named case and in accordance with my earlier orders."); *Arista Records LLC v. Does 1-16*, 1:08-CV-765 GTS/RF, 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009) *aff'd sub nom. Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ("The discovery information sought by the Plaintiffs is specific and reasonable. The Subpoena seeks the IP user's name, address, telephone number, email address, and MAC, and nothing else that would be considered intrusive. All of this information will reasonably facilitate Plaintiffs' efforts to serve process upon the alleged offenders in order to bring suit against them for their alleged conduct. Once again, this is another element that tips in

Plaintiffs' favor"); *AF Holdings, LLC v. Doe*, C 12-2049 PJH, 2012 WL 3835102 (N.D. Cal. Sept. 4, 2012) (granting a Motion to Dismiss on the basis of a negligence claim which has not been pled here by Plaintiff); *Patrick Collins, Inc. v. Does 1-4*, 12 CIV. 2962 HB, 2012 WL 2130557 (S.D.N.Y. June 12, 2012) ("ORDERED that Plaintiff is allowed to conduct immediate discovery on the ISPs listed in Exhibit B to the Declaration of Tobias Fieser").

Some of the courts listed above have used the joinder rule to limit a plaintiff's ability to identify Doe defendants on a large scale basis. That judicial strategy has worked insofar as plaintiff does not have to sue everyone in the same swarm the plaintiff can look at all the movies the defendants have downloaded and only sue the most egregious infringers. That is what Plaintiff has done here.

Plaintiff was not obligated to cite *Patrick Collins, Inc. v. Doe 1*, No. 12-cv-1154 (ADS) (GRB), __ F.R.D. __, 2012 WL 5879120, at *4-*5 (E.D.N.Y. Nov. 20, 2012). The Maryland Rules of Professional Conduct state: "A lawyer shall not knowingly ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]" MD R CTS J AND ATTYS Rule 16-812, MRPC 3.3. This case was not controlling on this Court because it arose in the Eastern District of New York which is not a court within the Fourth Circuit. Further, it is not controlling because it was an opinion of a District Court and therefore not binding on this Court. Finally, as stated above, the holding in that case is consistent with the holding Plaintiff urged upon this Court. Namely, that Plaintiff should be allowed to subpoena the identity of one John Doe Defendant per lawsuit filed. A large amount of case law exists on the subject of copyright infringement suits on the Internet. Indeed, a search on Westlaw of "bittorrent", "copyright" and "subpoena" reveals over 300 cases. Undersigned, in both its original Motion for Leave and its

13

Memorandum Explaining Why it has a Clear and Undeniable Right to Issue a Rule 45 Subpoena made an effort to cite as much case law as possible.

**E. If Malibu Media is granted a subpoena to serve on an ISP and determines the name and address of the IP subscriber, what does Malibu Media intend to do with that information?**

Plaintiff is going to litigate its case. Attached as Exhibit B is a 26(f) report from *Malibu Media, LLC v. John Does 1, 6, 13, 14, and 16*, Case No. 2012-2078, in the Eastern District of Pennsylvania, which sets forth how Plaintiff litigates its cases.

In its Complaint, Plaintiff has provided every Defendant with an exculpatory evidence form and the opportunity to provide evidence of non-infringement to Plaintiff. With any Defendant that fails to provide a credible basis for non-infringement, Plaintiff will serve the Defendant and proceed to litigate. Should the Court desire Plaintiff to do so, Plaintiff will file any identifying information by the Defendants under seal or anonymously, in order to prevent any unnecessary leverage or pressure to settle. After that, Plaintiff will serve Defendant. Plaintiff will depose the ISPs to lay the foundation of its records into evidence, depose search engines to evaluate certain key words and whether the defendant was searching for Plaintiff's content, and depose the defendant. If a "someone else used my internet" defense is presented, Plaintiff will depose the other potential users. Plaintiff has an expert on retainer to look at the computers. This expert is also in the process of preparing a report that demonstrates that IPP's software is accurate and works exactly the way IPP testifies that it works. Plaintiff will file this report in its cases once it is completed. Copies of the experts' CVs will be attached.

Plaintiff will prove beyond a preponderance of the evidence that the infringement was committed through the internet service reflected by the Internet Protocol Address ("IPA") subscribed to by each John Doe Defendant. Although unlikely, Plaintiff may also substitute a person other than the ISP subscriber from whose internet service infringement took place. This

14

is the reason Plaintiff is saying in the first instance that the John Doe defendant can remain anonymous through the end of discovery.

Plaintiff's expectation is that probably about one third of its cases will not proceed past receiving the identity of the Defendant from the ISP. This is because in some cases the ISP does not have records of an IPA because of its limited data retention. Also, in some cases a Defendant will prove to be active duty military, or unable to pay a judgment. In these cases, Plaintiff does not pursue the Defendant. Should a Defendant want to settle early in the litigation process, Plaintiff will consider any offers and may in turn propose its own settlement offer.

### F. Limitation of Subpoenas to Curb Unwarranted Pressure to Settle

Plaintiff suggests that a protective order requiring that Court filings not contain the Doe Defendant's name prior to the end of the discovery period will enable fair litigation by both parties and remove any potential for exploitation. Plaintiff does not suggest that any other limitations be imposed on the scope of the subpoena or that any of the regular rules of procedure which govern all cases be modified.

### G. The Effect of the "Six Strikes" Program on Issuing a Subpoena

The "Six Strikes" program does not alleviate the need for copyright holders like Plaintiff to request subpoenas. First, "Six Strikes" is for MPAA and RIAA affiliate members only. Plaintiff has not been provided the benefit of participating in this program. Further, those involved in creating the "Six Strikes" program have made it clear that it is not intended to deter the most consistent and extreme infringers, whom Plaintiff is suing[3]. Indeed, Thomas Dailey, the senior VP of Verizon, stated, "this [] system is not going to stop hardcore infringers" and that it

---

[3] http://www.broadcastingcable.com/article/492241-Six_Strikes_Alerts_Get_Once_Over_on_Hill.php
"She said she expected that people after a couple of warnings will get the message, but conceded it won't stop the hard-cores"

15

is instead about changing behavior, "where it can be corrected."[4] This process is not designed by Congress or enacted into law and therefore does not supersede the Copyright Act which grants a copyright holder the right to sue an individual for copyright infringement and does not replace Plaintiff's right to subpoena the identity of a John Doe defendant to prosecute a claim for infringement.

### H. IPP Ltd's Reliability

Adverse counsel raise issues regarding Plaintiff's technology and investigator, IPP Ltd. Respectfully, these critiques have absolutely no basis in fact. IPP, Ltd.'s detection technology is 100% accurate and the process of detection is unimpeachable. As stated above, Plaintiff is currently in the process of having independent expert witnesses with computer forensic backgrounds evaluate IPP's software in order to provide testimony that the software works. These experts have already thoroughly tested the software and orally reported to Plaintiff that the software does work as described. Plaintiff anticipates this report will be completed in the next few weeks and will file the report in these proceedings at the appropriate time.

#### 1. An Internet Protocol Address Cannot Be Spoofed

In the letter by John C. Lowe [CM/ECF 14-6] adverse counsel suggests that Plaintiff's identification of an Internet Protocol Address ("IPA") may be inaccurate because it is possible to spoof the IPA. "In computer networking, the term IP address spoofing or IP spoofing refers to the creation of Internet Protocol (IP) packets with a forged source IP address, called spoofing, with the purpose of concealing the identity of the sender or impersonating another computing system."[5] While this may be possible with some software, in each case before this Court, Plaintiff is certain that the IPA was not spoofed. Indeed, IPP's software established a direct

---

[4] Id.
[5] http://en.wikipedia.org/wiki/IP_address_spoofing citing
http://66.14.166.45/sf_whitepapers/tcpip/IP%20Spoofing%20-%20An%20Introduction.pdf

16

Transmission Connection Protocol/Internet Protocol ("TCP/IP")[6] connection with the John Doe Defendants' IP address. *See* Complaint ¶17. When a direct TCP/IP connection is established, it is impossible for an individual to hide, mask, or spoof his or her IP address because that individuals computer directly connects with IPP's server. This fact was attested to by the MPAA, RIAA and the ISPs during the hearings for Six Strikes and there are several academic journals that reach the same conclusion.

### 2. IPP'S Relationship with Guardaley and the German High Court

In the letter by Jason Sweet [CM/ECF 14-3], adverse counsel suggests that IPP Limited (1) may not exist; (2) if it does exist is the same as the German investigators Guardaley; and (3) that the State Court of Berlin found flaws regarding Guardaley's technology. ==Adverse counsel sets forth these conspiracy theories with little evidence==.

==First, IPP's expert Tobias Fieser will be a fact witness==. Second, IPP, Ltd. and Guardaley have no common ownership or clients. Occasionally, the two companies work with each other, mainly because they are in the same common field and location. Further, adverse counsel's

---

[6] "TCP/IP (Transmission Control Protocol/Internet Protocol) is the basic communication language or protocol of the Internet. It can also be used as a communications protocol in a private network (either an intranet or an extranet). When you are set up with direct access to the Internet, your computer is provided with a copy of the TCP/IP program just as every other computer that you may send messages to or get information from also has a copy of TCP/IP.

"TCP/IP is a two-layer program. The higher layer, Transmission Control Protocol, manages the assembling of a message or file into smaller packets that are transmitted over the Internet and received by a TCP layer that reassembles the packets into the original message. The lower layer, Internet Protocol, handles the address part of each packet so that it gets to the right destination. Each gateway computer on the network checks this address to see where to forward the message. Even though some packets from the same message are routed differently than others, they'll be reassembled at the destination."
http://searchnetworking.techtarget.com/definition/TCP-IP

17

letter misidentifies Guardaley's owner as Patrick Achache, further demonstrating that it is based simply on conjecture.

The German investigative company Guardaley has not reinvented itself as IPP, Ltd. Indeed, Guardaley is still filing declarations in several cases. See e.g. *Studio West Productions, Inc. v. Does 1-14*, Case No. 2:13-cv-00370-AB (E.D. Pa., January 28, 2013); *Studio West Productions, Inc. v. Does 1-237*, Case No. *4:12-cv-03690* (S.D. Tex., January 8, 2013); *Studio West Productions, Inc. v. Does 1-205*, Case No. 4:12-cv-03691 (S.D. Tex., January 8, 2013); *Nu Image, Inc. v. Does 1-91*, Case No. 4:12-cv-00331-RH-CAS (N.D. Fla., October 26, 2012). Finally, adverse counsel misstates the proceedings which took place in Berlin regarding Guardaley's technology. The findings adverse counsel suggests were *not* proven in court or by a third party expert but by merely alleged by a competitor. The judgment which adverse counsel refers to is not legally binding, and most importantly Guardaley's case has no bearing on IPP, Ltd. With each John Doe Defendant in this case, Plaintiff can provide Defendant with a packet sniffer demonstrating the piece of the BitTorrent file that the Defendant was distributing. As Plaintiff's experts will testify, the packet sniffer and direct TCP/IP connection simply cannot be manipulated or spoofed. Put simply, the detection technology employed by IPP, Ltd. is simply not a major concern of Plaintiff's. It is infallible and the process is not impeachable. If challenged, Plaintiff will prove these points.

1. **CONCLUSION**

For the foregoing reasons Plaintiff respectfully requests that the Court grant Plaintiff's motion for leave to subpoena the John Doe Defendants identities.

Dated: March 23, 2013

18

                    Respectfully submitted,
                    MALIBU MEDIA, LLC.
                    PLAINTIFF

                    By:  /s/*Jon A. Hoppe*
                    Jon A. Hoppe, Esquire #6479
                    Counsel
                    Maddox, Hoppe, Hoofnagle &
                        Hafey, L.L.C.
                    1401 Mercantile Lane #105
                    Largo, Maryland 20774
                    (301) 341-2580

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 23, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system and to both adverse and amici counsel through the following electronic mail addresses:

lholzman@theholzmanlawfirm.com;

jsweet@boothsweet.com;

johnseiver@dwt.com;

bhuffman@lockelord.com;

johmlowe@johmlowepc.com

irasiegel@earthlink.net.

                    By:  /s/*Jon A. Hoppe*

19